During the charge Mr. Nolan (for the defendant):

"I ask your honor to charge the jury that they are instructed that the fastening and placing of the guy rope was a detail of the work for the placing of which the defendant itself was not liable.

"The Court: The fastening and placing of the guy upon the ventilator was a detail of the work for the placing of which the defendant itself was not liable. I will charge it."

That, then, was the law of the case. If so, negligence could not be predicated upon the position of the guy. A verdict based upon such negligence would be against the law as charged.

[2] Nor can actionable negligence be found from the fact that five men were in the gang instead of six. Five only were frequently employed, and witnesses testified they had served as "hooker on" and "pass the word man" at the same time. The fact that Maher was so acting was not the proximate cause of the accident. The plaintiff testified that he went over to speak to Nelson about the way in which the man on the dock was slinging the draft, so, according to his testimony, he would have put himself in the same place he was in at the time of the accident whether he had any duty as hooker on or not. It seems to me that, with negligence based upon the placing of the guy eliminated, there is no basis for this judgment.

[3] The accident was apparently caused by plaintiff's own negligence. He knew this draft was swinging over. He should have watched out for and avoided it. Having failed to prove negligence on the defendant's part, the verdict should not stand.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

### In re RASQUIN et al.

(Supreme Court, Appellate Division, First Department. December 31, 1913.)

CHARITIES (§ 21*)—CHARITABLE BEQUESTS—UNCERTAINTY OF BENEFICIARIES.

Under Act 1893, now Personal Property Law (Consol. Laws 1909, c. 41) § 12, providing that no bequests for charitable or benevolent purposes shall be deemed invalid by reason of indefiniteness or uncertainty of the designated beneficiaries, a bequest to "the poor of" a certain town is valid.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 44–50; Dec. Dig. § 21.*]

Appeal from Surrogate's Court, New York County.

In the matter of the judicial settlement of the account of William Rasquin, Jr., and another, as executors. From a decree of the Surrogate's Court settling the executors' accounts, the Town of Orleans, Barnstable County, Massachusetts, appeals. Decree modified as stated.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Norman B. Beecher, of New York City, for appellant.
William Rasquin, Jr., of New York City, for respondents.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

McLAUGHLIN, J. The question presented by this appeal involves the validity of a legacy contained in the last will and testament of Mary E. Dale Burke, who died subsequent to September, 1909. The legacy was as follows:

"Second. I give and devise to the town of Orleans, in the county of Barnstable, state of Massachusetts, the sum of five thousand dollars, in trust, nevertheless, that the said town by and through its proper officers, shall invest and keep the same invested so as to obtain the best interest and income available and apply the said interest and income to and for the benefit of the poor of said town."

The executors named in the will, to whom letters testamentary were issued, instituted this proceeding for a final settlement of their accounts, in which it appeared that they had refused to pay the legacy on the ground that the same was invalid. The town of Orleans filed objections to the account, claiming that the legacy was valid and should be paid. The surrogate referred the question to a referee, who found in favor of the executors' contention and reported that the residuary legatee was entitled to the money sought to be disposed of by the provision of the will quoted. The report was confirmed by a decree of the Surrogate's Court, and the town of Orleans appeals.

The referee based his report upon the ground that the trust which the testatrix attempted to create in favor of the town of Orleans was invalid: (a) Because the town did not have the legal capacity to accept and execute it; and (b) because the beneficiaries were so indefinite that the same could not be enforced.

The statute of Massachusetts and judicial decisions made under it were, by stipulation, considered in evidence, from which I am of the opinion that the town has the power to accept the money sought to be given to it and dispose of the same as directed by the testatrix. The town exists under the general laws of the commonwealth of Massachusetts applicable to towns and is subject to the Revised Laws of 1902, c. 25, § 13, which provides in part that:

"A town * * * may hold personal estate for the public use of its inhabitants and alienate and dispose of the same."

To relieve, in a proper case, the poor of the town of Orleans, is one of the duties imposed by statute upon the appellant. It is therefore specifically authorized by statute to hold property for that purpose.

In Higginson v. Turner, 171 Mass. 586, 51 N. E. 172, the court held that the town of Boston and its successor, the city of Boston, had authority to accept and execute the trust created by the will of Benjamin Franklin, which was to hold 2,000 pounds Sterling and loan it out at 5 per cent. interest to young married artificers.

"It is now well settled," said the court in that case, "that a town may, in its corporate capacity, accept a gift of real or personal estate left to it in trust for charitable purposes, and may act as trustee and execute the trust."

In Nourse v. Merriam, 8 Cush. (Mass.) 11, the court, in holding that the town of Bolton might administer a trust for the benefit of a school, said:

"We have no doubt that a municipal corporation, a town, in Massachusetts, is competent to take and hold real and personal estate in its corporate capac-

ity, for the promotion and advancement of any of the purposes for which these corporations are established; not only those for which such towns may raise and assess money on the inhabitants by taxation, but analogous purposes, or those of a like kind; such as are for the *common convenience and accommodation of the inhabitants,* though not required by law."

And in Kennedy v. Town of Palmer, 1 Thomp. & C. 581, the Supreme Court of this state held that the town of Palmer, in Massachusetts, could accept a gift of $1,000, to be held in trust and the income "paid over and used for the benefit of the poor of said town."

The other ground upon which the referee based his conclusion is likewise untenable, since indefiniteness of the beneficiary does not, under the statute, render invalid a trust created for charitable purposes. In 1893 a statute was passed (now Personal Property Law, § 12) providing, among other things, that:

"No gift, grant, or bequest to religious, educational, charitable, or benevolent uses, which shall in other respects be valid under the laws of this state, shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same."

Here, the beneficiaries are "the poor of said town." The poor of the town of Orleans is no more indefinite than many other provisions in wills which have been held sufficient since the passage of the act of 1893. Thus, it was held in Starr v. Selleck, 145 App. Div. 869, 130 N. Y. Supp. 693, affirmed 205 N. Y. 545, 98 N. E. 1116, that a testamentary gift to trustees, "to be used toward the purpose of maintaining a club house or club rooms for the social resort of young men and boys upon the west side of the city of New York, borough of Manhattan, or to the purposes of similar work, social or educational, for such young men and boys as individuals," was valid. Also, that a gift for the education of "sons of poor clergymen in France intending to become ministers of the Gospel" could be carried out (Matter of Miller, 149 App. Div. 113, 133 N. Y. Supp. 828); as could one to assist "poor needlewomen (seamstresses) whose toil is so poorly requited" (Manley v. Fiske, 139 App. Div. 665, 124 N. Y. Supp. 149, affirmed 201 N. Y. 546, 95 N. E. 1133).

In *Matter of Robinson,* 203 N. Y. 380, 96 N. E. 925, 37 L. R. A. (N. S.) 1023, a testatrix directed her trustees to disburse the principal or interest of her residuary estate, or both in their discretion, "to provide shelter, necessaries of life, education, general or specific, and such other financial aid as may seem to them fitting and proper to such persons as they shall select as being in need of the same," and authorized her trustees to carry out such provision. It was held that the purpose of the testatrix was within the language of the statute which authorized gifts "to religious, educational, charitable or benevolent uses," and that the court could and would compel the trustees to carry out the same.

The authorities cited by the respondent (Fosdick v. Town of Hempstead, 125 N. Y. 581, 26 N. E. 801, 11 L. R. A. 715, Tilden v. Green, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487, and Fairchild v. Edson, 154 N. Y. 199, 48 N. E. 541, 61 Am. St. Rep. 609), are in no way in conflict with this view, since they involve testamen-

tary gifts which went into effect prior to the enactment of the statute referred to.

The decree of the Surrogate's Court is therefore modified so as to direct the executors to pay to the appellant the legacy in question, together with costs to the appellant and the executors payable out of the estate. All concur.