Hogan, J.
 

 The complaint in this action is voluminous, covering thirty-five pages of the record. A determination of the sufficiency of the same does not require an analysis of each paragraph, and reference will be made to the same only so far as necessary to outline the cause of action.
 

 Bobert Bichard Bandall died in the city of Hew York on or about January 5th, 1801, leaving a last will and testament which was duly admitted to probate July 10th, 1801.
 

 
 *288
 
 By the terms of the sixth clause of said will all of the rest, residue and remainder of the estate of the decedent, both real and personal, was devised and bequeathed to the chancellor of the state of Hew York and other officials named therein, and their successors in office forever, to, for and upon the uses, trusts, intents and purposes, and subject to the directions and appointments mentioned therein, out of the rents, issues and profits of the said real and personal estate to erect and build upon some eligible part of the land upon which the testator resided an asylum or marine hospital to be called
 
 “
 
 The Sailors’ Snug Harbor ” for the purpose of maintaining and supporting aged, decrepit and worn-out sailors. The testator declared his intention that the institution directed to be created should be perpetual; that the officers named therein and their successors should forever continue to have the superintendence of the same, and be the governors thereof; that it was his will and desire that if his intention could not legally be carried out without an act of the legislature, that the parties named as trustees in the will should apply for such an act of the legislature to incorporate themselves for the purposes specified.
 

 The testator further declared:
 
 ‘ ‘
 
 And I do further declare it to be (my) will and intention that the said rest, residue, and remainder of my real and personal estate should be, at all events, applied for the uses and purposes above set forth; and that it is my desire that all courts of láw and equity will so construe this, my said Will, as to have the said estate appropriated to the above uses, and that the same should in no case, for’ want of legal form or otherwise, be so construed as that my relations, or any other persons, should heir, possess or enjoy my property, except in the manner and for the uses hereinabove specified.”
 

 The testator left personal property and real estate in the state of Hew York. The trustees named in the will and their successors in office were designated by the testator as executors thereof; Pursuant to the directions
 
 *289
 
 contained therein, the executors and trustees made application to the legislature of the state of Hew York, and in 1806 did procure the enactment of chapter 4 of the Laws of 1806, which by its preamble referred to the last will and testament of Robert Richard Randall and the provisions thereof relating to “The Sailors’ Snug Harbor,” and provided that the officers nominated in the will as trustees and then* successors were constituted a body corporate in fact and in name under the name and style of the “ Trustees of the Sailors’ Snug Harbor of the City of Hew York,” and by that name they and their successors should have continued succession, be capable in law of suing and being sued, of holding and disposing of the real and personal estate devised and bequeathed to them under the will of Hr. Randall, which was declared to be vested in them and their successors for the purposes therein expressed according to the intentions of the will, and should be capable of purchasing, holding and conveying any other real and personal estate for the use and benefit of the corporation in such manner as they, or a majority of them, deemed would he most conducive to the interests of the institution; to make rules and regulations for the government of the corporation and the management of its business. The legislature further declared that the statute should be taken to be a public act, and be construed in all courts and places benignly and favorably for the purposes therein intended.
 

 By chapter 69 of the Laws of 18Í4 the act of 1806 was amended so as to define the personnel of some of the individuals named as trustees and executors in said will and in the act of 1806. In 1828 the legislature enacted chapter 216 of the laws of that year, upon the petition of the trustees, which act had reference to their authority over the real estate and the purchase of additional lands for the erection of the asylum.
 

 In 1830 the trustees had in addition to the real estate about one hundred thousand dollars, the result of the
 
 *290
 
 accumulation of rents of the real estate, and in May, 1831, the trustees, having first obtained the approbation of the Court of Chancery (Laws of 1828, chapter 276), purchased land on Staten Island, on which they proceeded to erect the asylum and marine hospital for the purposes specified in the will of Mr. Randall. The asylum was opened in 1833, and thereafter until 1894, with like approbation, the trustees purchased additional lands, and erected buildings thereon, at a cost of upwards of one million two hundred fifty thousand dollars. In 1910 the number of aged, decrepit and worn-out sailors, inmates of the institution, was about eight hundred and forty.
 

 ■A portion of the real estate left by the decedent consisted of land in the fifteenth ward of the city of New York, which the trustees in or about the year 1830 caused to be divided into two hundred and fifty-three lots, which were leased upon ground leases for a period of twenty-one years, with option of renewal of rental, and upon which private residences were erected.
 

 In or about 1880 the land became valuable for business purposes, and ceased to be desirable for residential purposes. Since 1890 the trustees have endeavored to repossess themselves of desirable plots of the land by extinguishing ground leases, and such land thus repossessed by them has advantageously been improved by the-erection of business buildings, but the moneys in their possession are not sufficient to enable them to erect adequate business blocks on all of the property repossessed by them, and the property still used for residential purposes cannot be rented upon advantageous terms.
 

 The complaint alleges
 
 “
 
 that,unless portions of the said tract shall be sold or mortgaged and the proceeds either shall be applied to the extinguishment of outstanding ground leases, so far as may be necessary, and the erection of large modern business buildings on portions of the said tract, there is a likelihood that the property in the possession of the Trustees will be reduced greatly in
 
 *291
 
 value, thereby tending to impair the usefulness and scope of the aforesaid charity and thus to defeat the intention of the founder thereof.”
 

 The financial statement of the trustees as of January 1st, 1911, is set forth in the complaint. Other and" further allegations are contained in the complaint having reference to the property, the funds and management of the same under the charge of the trustees, and the prayer for relief is as follows:
 

 “
 
 jFirst.
 
 That by a judgment to be made herein it may be judicially determined and decreed whether the plaintiffs, or any of the plaintiffs, have power and authority to sell or to mortgage all, or any part, of the real estate in the First and Fifteenth Wards of the City of New York, hereinbefore referred to, of which the aforesaid Robert Richard Randall died seized; and that if it be found that power to sell the real estate or any part thereof exists, or that such power may by the order or judgment of this Court be conferred upon the plaintiffs, that the Court shall determine, or shall permit the plaintiffs to determine, what part, if any, of said real estate should be sold, and that it will thereupon by its order or judgment, or by an order or orders to be made at the foot of its judgment, sanction, permit or direct a sale of such real estate, or of such portions of said real estate, if any, as it shall be determined should be sold.
 

 “Second.
 
 That by the judgment to be made herein the plaintiffs be instructed whether they may lawfully employ the personal property in their possession in purchasing improvements erected by their lessees upon the leasehold properties at the expiration of leases, or in purchasing outstanding leases and leasehold estates of their properties; or in the erection of buildings for investment purposes.
 

 “Third.
 
 That by the judgment to be made herein the plaintiffs may be instructed as to their powers and duties under the Will of the said Robert Richard Randall, and
 
 *292
 
 the statutes hereinbefore referred to, in respect to all of the remaining questions referred to in the foregoing complaint, and in respect of any and all the other questions with reference to which it shall appear that the plaintiffs require, or ought to act, under the instruction of the Court; and,
 

 “Fourth. That the plaintiffs may have such other and further or different relief in the premises as may be agreeable to equity, and that their costs of this action may be awarded and paid as the Court shall direct.”
 

 To the complaint the attorney-general, who was the sole defendant, demurred upon the ground that the complaint did not state a cause of action. The demurrer was sustained at Special Term, Mr. Justice Page writing the opinion. Upon appeal to the Appellate Division the interlocutory judgment of the Supreme Court was- unanimously reversed and demurrer overruled. An exhaustive and interesting opinion was written by Mr. Justice Hotchkiss and a concurring opinion by Presiding Justice Ingraham.
 

 After the death of Robert Richard Randall, one Inglis commenced an action in the United States Circuit Court against the “Trustees of the Sailors’ Snug Harbor,” which action was brought to trial in October, 1827. Upon the trial of the action the judges of the Circuit Court were opposed in opinion upon certain points, which were certified by the judges of the Circuit Court to the Supreme Court of the United States. One of the questions certified was:
 

 “5. Whether the devise in the will of Robert Richard Randall of the lands in question, is a valid devise, so as to divest the heir-at-law of his legal estate, or to affect the lands in his hands with a trust ? ”
 

 After due consideration by the Supreme Court of the United States that court certified to the judges of the Circuit Court of the United States for the Southern District of New York in answer thereto:
 

 
 *293
 

 “5.
 
 The devise in the Will of Robert Richard Randall, of the lands in question is a valid devise, so as to divest the heir-at-law of his legal estate.”
 
 (Inglis
 
 v.
 
 Trustees of Sailors' Snug
 
 Harbour, 3 Peters, 99, 189.)
 

 The will in question was executed and admitted to probate in this state upwards of one hundred years ago, and the beneficence of the testator was recognized by the legislature of this state by the several statutes to which reference has been made; under such legislative recognition, and supported by the decision of the Supreme Court of the United States, the corporation and trustees named in the will, and their successors, have for a like period of time been engaged in carrying out the intention expressed by the testator in his will. The advice and direction of the court as to the administration of the affairs committed to the trustees is sought in this action practically in the same manner in which their administration of the trust was directed under the statute of 1828 by the Court of Chancery.
 

 The exhaustive research of Mr. Justice Hotchkiss in his opinion upon the law of charitable trusts renders it unnecessary to review the numerous decisions of the courts prior to the enactment of the Tilden Act, so called, now section 12, Personal Property Law (Cons. Laws, ch. 41), and section 113, Real Property Law (Cons. Laws, ch. 50). The several cases in this court were carefully collated and considered by Judge Rapadlo in
 
 Holland
 
 v.
 
 Alcock
 
 (108 N. Y. 312), where it was held that the English doctrine of trusts for charitable purposes, as distinguished from private trusts governed by the general rules of law, and the doctrine of
 
 cy pres
 
 did not prevail in this state. That decision was followed by the courts of this state resulting in the failure of numerous trusts for charitable purposes, including a trust under the will of Samuel J. Tilden, deceased.
 
 (Tilden
 
 v. Green, 130 N. Y. 29, decided in October, 1891.)
 

 Early after the decision of that case the legislature of
 
 *294
 
 this state enacted chapter 701 of the Laws of 1893, the first section of which is substantially contained in the language of section 12 of the Personal Property Law and section 113 of the Eeal Property Law.
 

 Section 2 of the act of 1893 provided:
 

 “§ 2. The supreme court shall have control over gifts, grants, bequests and devises in all cases provided for by section one of this act. The attorney-general shall represent the beneficiaries in all such cases and it shall be his duty to enforce such trust by proper proceedings in the court.”
 

 In construing the statute, this court held that the legislature intended by that law to restore the law of charitable trusts as declared in the case of
 
 Williams
 
 v.
 
 Williams
 
 (8 N. Y. 525), which holds that the law of charitable uses as recognized in England prior to the Eevolution was in force in this state.
 
 (Allen
 
 v.
 
 Stevens,
 
 161 N. Y. 122;
 
 Matter of Griffin,
 
 167 N. Y. 71;
 
 Bowman
 
 v.
 
 D. & F. M. Society,
 
 182 N. Y. 494;
 
 Matter of Robinson,
 
 203 N. Y. 380;
 
 Matter of Cunningham,
 
 206 N. Y. 601.)
 

 The decision of the United States court in the
 
 Inglis
 
 case, and the several decisions of this court referred to subsequent to the enactment of the “Tilden Act” so called, renders inevitable a conclusion that under the will of Mr. Eandall a valid and enforceable trust was created, and the property bequeathed and devised therein became vested in the trustees named in said will and their successors.
 

 Section 2 of the statute of 1893 was amended by chapter 291 of the Laws of 1901 so as to read as follows:
 

 “ § 2. The supreme court shall have control over gifts, grants, bequests and devises in all cases provided for by section one of this act and, whenever it shall appear to the court that circumstances have so changed since the execution of an instrument containing a gift, grant, bequest or devise to religious, educational, charitable or
 
 *295
 
 benevolent uses as to render impracticable or impossible a literal compliance with the terms of such instrument, the court may, upon the application of the trustee or of the person or corporation having the custody of the property, and upon such notice as the court shall direct, make an order directing that such gift, grant, bequest or devise shall be administered or expended in such manner as in the judgment of the court will most effectually accomplish the general purpose of the instrument, without regard to and free from any specific restriction, limitation or direction contained therein; provided, however, that no such order shall be made until the expiration of at least twenty-five years after the execution of the instrument or without the consent of the donor or grantor of the property, if he be living. The attorney-general shall represent the beneficiaries in all such cases, and it shall be his duty to enforce such trusts by proper proceedings in the court.”
 

 By chapter 144, Laws of 1909, section 2 was again amended by the elimination therefrom of the words “ that no such order shall be made until the expiration of at least twenty-five years after the execution of the instrument, or ” and when the statute was embodied in the Consolidated Laws it became subdivision 2 and subdivision 3 of section 12, Personal Property Law and the same subdivisions of section 113, Eeal Property Law.
 

 Evidently it was the intention of the legislature by the amendment to section 2, above referred to, to extend the jurisdiction of the Supreme Court to the administration of a trust to the cases provided for in section 12 of the Personal Property Law and section 113 of the Eeal Property Law.
 

 The complaint in this action contains allegations tending to show that the devisee of the trust cannot literally comply with the terms of the will of Mr. Bandall, and under the statute above referred to the Supreme Court is authorized to make a decree directing the trustees in the
 
 *296
 
 administration of the trust and in such manner as will more effectually accomplish the intention of the testator.
 

 While the statute imposes upon the attorney-general the obligation to represent the beneficiaries and to enforce the trust by proper proceedings in the court and might be construed as contemplating an application to that officer to take the initiative in securing an adjudication by the courts, it is still subject to a construction that he should represent the beneficiaries, parties to the proceed-, ing, which as" shown in this case number upwards of eight hundred and the personnel of which is constantly changing. The opinion of Mr. Justice Hotchkiss in the Appellate Division upon that branch of the case established the propriety of naming the attorney-general as a party defendant and in his conclusion we ooncur.
 

 We do not undertake to prescribe a rule of conduct for the guidance of the Supreme Court upon the hearing of the case. The judgment of the justice must of necessity be exercised after the development of the facts, and the extent to which his judgment shall be exercised will be dependent thereon. We merely hold that the complaint does contain some allegations of fact proper to be submitted to the court for its direction to the trustees.
 

 The order of the Appellate Division must, therefore, be affirmed, and the question certified answered in the ' affirmative.
 

 Willard Bartlett, Ch. J., Werner, Hisoock, Chase; Collin and Miller, JJ., concur.
 

 Order affirmed, without costs.