the death of the person who is alleged to have incurred the obligation. There are, undoubtedly, some considerations of natural justice which would have warranted Dr. Clyde in providing a larger compensation to the claimant; but the record before us does not justify the conclusion that there was any expressed or implied contract or promise on his part to pay for the alleged services which were undoubtedly rendered in the performance of those good offices which a landlady of long years of association with a boarder would be prompted to make in his old age.

The authorities are uniformly against the claimant in this matter; public policy demands that the estates of deceased persons shall not be raided by persons claiming that which they have never asserted in any manner during the lifetime of the deceased. Matter of Dole, 168 App. Div. 253, 255, 153 N. Y. Supp. 895; Kearney v. McKeon, 85 N. Y. 136; Matter of Van Slooten v. Wheeler, 140 N. Y. 624, 35 N. E. 583; Porter v. Rhoades, 48 App. Div. 635, 63 N. Y. Supp. 112; Forbes v. Chichester, 8 N. Y. Supp. 747.[1]

The decree, in so far as appealed from, should be reversed. All concur, except KELLOGG, P. J., and HOWARD, J., who dissent.

---

(173 App. Div. 473)

### In re LYON.

### In re MERRITT'S WILL.

(Supreme Court, Appellate Division, Second Department.    June 23, 1916.)

1. CHARITIES ⬤⇒25—CHARITABLE TRUSTS—MAINTENANCE OF CEMETERY.
   Under Personal Property Law (Consol. Laws, c. 41) § 13a, and Real Property Law (Consol. Law, c. 50) § 114a, relating to private burial lots and trusts for their maintenance, where the testator sought to provide for the creation and maintenance of a public cemetery, but the trust failed because his title to the property devised was declared fraudulently obtained, the trust was nevertheless good as to the family lot provided by the same will.

   [Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 11–13; Dec. Dig. ⬤⇒25.]

2. CHARITIES ⬤⇒25—CHARITABLE TRUSTS—MAINTENANCE OF CEMETERY—DUTIES OF TRUSTEES.
   Where the intended charitable trust for the maintenance of a public cemetery failed because testator's title to the property devised was declared fraudulently obtained, but a portion of the fund devised actually belonged to testator, the trustees were under the duty of expending such sum for the purpose directed in the will.

   [Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 11–13; Dec. Dig. ⬤⇒25.]

3. CHARITIES ⬤⇒43—CHARITABLE TRUSTS—MAINTENANCE OF CEMETERY.
   Real Property Law, § 113, relating to grants and devises of real property for charitable purposes, treating of indefiniteness or uncertainty of persons designated as beneficiaries, and of circumstances changed since the creation of the trust, so as to render impracticable or impossible a literal compliance, does not apply, where the beneficiaries are certain, and

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 55 Hun, 611.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the only change of circumstances was that the testator's title was declared fraudulently obtained, so that the property devised could not be used to accomplish the general purpose.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 83–90; Dec. Dig. &#9682;&#8594;43.]

4. CHARITIES &#9682;&#8594;43—CHARITABLE TRUSTS—MAINTENANCE OF CEMETERY.

Where the testator sought to provide for the creation and maintenance of a public cemetery, but the trust failed because his title to the property devised was declared fraudulently obtained, under Real Property Law, § 113, relating to power of Supreme Court to carry out general purpose of charitable trusts, it is not for the surrogate or Appellate Division to decide whether the Supreme Court will execute the trust, but that can be done only on application of the charity trustees to the Supreme Court.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 83–90; Dec. Dig. &#9682;&#8594;43.]

5. WILLS &#9682;&#8594;785—ESTATES CREATED—ELECTION.

Where a will devised certain estates to an incompetent, and it was afterwards decided that the property so devised belonged to her, and not to the testator, but that he had fraudulently acquired it, a committee having her affairs in charge should not elect for her, but should await her possible restoration.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2007, 2035, 2036; Dec. Dig. &#9682;&#8594;785.]

Appeal from Surrogate's Court, Westchester County.

Proceedings in the final judicial settlement of the account of John M. Lyon, executor of the last will and testament of Daniel E. Merritt, deceased. From an amended decree of the Surrogate's Court, the executor and others appeal. Decree modified and affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, MILLS, and RICH, JJ.

Arthur R. Wilcox, of Port Chester, for appellants.

F. H. La Guardia, Deputy Atty. Gen., for respondent.

THOMAS, J. The appeal is interesting for its novelty, and not free from difficulty. The testator's will, made in 1913, undertook to create a trust for his sister for her life in all the property of which he attempted disposition, then a second life estate insufficient of the estate to pay an income of $600; then he committed the remainder to a board of trustees, constituted as provided: (1) From the rents, issues, of the remainder, "to plan, lay out and build a public cemetery, which cemetery is to be known as 'the Merritt Public Cemetery,' upon the farm of land upon which I now live on Ridge street, in the towns of Rye and Harrison, Westchester county, New York, for the purpose of providing plots or places wherein the people of the village of Port Chester and vicinity may be buried without charge as soon as they, my said charity trustees, or a majority of them shall see fit"; (2) to use the income "forever thereafter" to support the cemetery, to build one or more vaults therein, and to keep in good condition a small burial plot wherein his parents and other relations are buried. The testator enjoins "courts of law and equity" to construe the will so as to apportion his estate to such uses, and "that the same should in no case, for want of legal form or otherwise, be so construed that my rela-

tions or other persons should heir, possess or enjoy my property, except in the manner and for the uses and purposes hereinabove specified."

The will was admitted to probate upon the petition of John M. Lyon, who became sole executor, and who, with George A. Slater, was appointed committee of the person and the estate of the testator's sister, Emma E. Merritt, who was his sole next of kin and heir at law, and who was adjudged incompetent on July 15th of the same year. There were found 11 instruments executed by the sister to the testator—2 purporting to convey four parcels of land, since appraised at $88,900, and 9 purporting to assign bonds and mortgages aggregating $52,800; but at the instance of the committee they were all adjudged void as procured fraudulently. It is shown by the final account of the executor that the testator's entire net estate is $15,314.16, subject to some deductions for costs of administration and other purposes, leaving a balance of about $12,000. It appears now (1) that the testator did not own the land which he directed to be converted into a cemetery; (2) that there are no rents to lay out and to support any cemetery; (3) that the only personal estate from which income could arise for that purpose is now about $12,000. Upon the final accounting the executor asked for a construction of the will, so far as it would create a charitable use, and from the decree that the provisions were valid the executor and committee appeal.

[1, 2] Had the testator owned the property, the question would fall within Inglis v. Trustees of the Sailors' Snug Harbor, 28 U. S. (3 Pet.) 99, 7 L. Ed. 617, and Trustees of Sailors' Snug Harbor v. Carmody, 211 N. Y. 286, 105 N. E. 543, provided a charitable use for a public cemetery is authorized by law. Section 13a of the Personal Property Law, and section 114a of the Real Property Law relate to private burial lots—but not to public cemeteries. But the land, which underlay the testator's project, was not his property. He had conveyances of it, and was the apparent heir to it. But his tenure, if under the deeds, has been declared fraudulent, and his succession was defeated by his sister's survival. The same is true of the greater part of the personal estate. There remains nothing but his intention to provide a free public burial place for the people in the environment of his residence, irrespective of their condition. I accept, with much hesitation, the conclusion of Surrogate Sawyer's opinion that the purpose is charitable. In any case, it would be a good trust as to the family lot. The intended method of realizing the purpose largely failed. There cannot be such a cemetery as the testator planned. There is left a small sum of money. The trustees can and must invest it as the will directs. With the income they can buy burial privileges in some cemetery, but they cannot maintain a public cemetery. The money cannot be regarded as a free public burial fund for all the people of Port Chester. The testator's vision has vanished. What he conceived is no longer conceivable.

[3] At such a time, resort is had to present section 113 of the Real Property Law, relating to "grants and devises of real property for charitable purposes." It treats of indefiniteness or uncertainty of

the persons designated as beneficiaries. Such is not the present difficulty. The statute has to do with circumstances "changed since the execution of an instrument containing a gift, grant or devise to religious, educational, charitable or benevolent uses," so "as to render impracticable or impossible a literal compliance with the terms of such instrument," and enables the court upon the application of the trustee or of the person or corporation having the custody of the property to direct that the gift "shall be administered or expended in such manner as in the judgment of the court will most effectually accomplish the general purpose of the instrument, without regard to and free from any specific restriction, limitation or direction contained therein." The circumstances have not changed since the testator made his will, except that it has been adjudged that he fraudulently appropriated to a public cemetery what has been restored to the rightful owner. The court cannot carry out the general purpose of the testator, because it has been adjudicated that the property he appropriated to it was fraudulently acquired and converted in intention to the use, or, in other words, because the general purpose was to make his sister's farm the essential element of his scheme for a public cemetery and to support it largely with her money. There is a fragment of property left. It cannot be used to "accomplish the general purpose of the instrument." At this time whatever could be done would not be even a semblance of the testator's proposal.

[4, 5] But decision now would be premature. It is not for the surrogate or this court to decide whether the Supreme Court will execute the trust in some degree. The final direction rests with the Supreme Court upon the application of the charity trustees. That can be done when the life estates expire. Circumstances may change. The incompetent may be restored, and elect to take under her brother's will. Then the testator's plan could be executed. Meantime the committee should not accept the provision made for her under the will. She cannot accept its benefits and reject it otherwise, and they should not elect for her.

The decree should be amenable to whatever disposition the Supreme Court may make of the question. In case it should refuse to administer the trust, the decree should be amendable to make disposition of the property. The decree, modified to meet such a possible exigency, is affirmed, without costs. All concur.