In the Matter of the Final Judicial Settlement of the Account
of Proceedings of JOHN M. LYON, as Sole Executor, etc., of
DANIEL E. MERRITT, Deceased.
JOHN M. LYON, as Executor, etc., of JOHN LYON and GEORGE
A. SLATER, as Committee, etc., of EMMA E. MERRITT, an
Incompetent, Appellants; THE PEOPLE OF THE STATE OF
NEW YORK and Others, Respondents.

(*Supreme Court, Appellate Division, Second Department, June* 23, 1916.)

WILL—DEVISE IN TRUST FOR PUBLIC CEMETERY—SUBSEQUENT DECREE THAT
TESTATOR FRAUDULENTLY ACQUIRED LANDS DEVISED—SURROGATE'S COURT
CANNOT ADMINISTER TRUST—POWER OF SUPREME. COURT—INCOMPETENT
PERSON—ELECTION TO TAKE UNDER WILL.

Where a testator attempted to devise lands to trustees to be devoted to
cemetery uses for the benefit of the inhabitants of a village and it was
thereafter decreed that the lands which the testator intended to devote
to that purpose had been fraudulently acquired by him through trans-
fers from an incompetent person, and said transfers have been set aside
so that the lands are no longer a portion of the estate, neither the sur-
rogate nor the Appellate Division on appeal from a decree of the surro-
gate has power to execute the trust. The question as to whether the
Supreme Court will execute the trust in part owing to the fact that some
personal property remains in the estate of the testator must be deter-
mined in that court upon the application of the trustees after the prece-
dent life estate expires.

Section 13a of the Personal Property Law and section 114a of the Real Property Law relate to private burial lots and not to public cemeteries.

Where the life beneficiary has been judicially declared to be incompetent and may yet be restored to sound mind so as to be able to elect whether she will take under the will, her committee should not be allowed to make an election for her.

APPEAL by John M. Lyon, as executor, and others, from parts of an amended decree and order of the Surrogate's Court of the county of Westchester, entered in the office of the clerk of said county on the 9th day of March, 1916.

Arthur R. Wilcox (George A. Slater and Charles F. Dalton with him on the brief), for the appellants.

F. H. La Guardia, Deputy Attorney-General (Egburt E. Woodbury, Attorney-General, and De Witt H. Lyon), for the respondents.

THOMAS, J.—The appeal is interesting for its novelty, and not free from difficulty. The testator's will, made in 1913, undertook to create a trust for his sister for her life in all the property of which he attempted disposition; then a second life estate in sufficient of the estate to pay an income of $600; then he committed the remainder to a board of trustees, constituted as provided, (1) from the rents, issues, of the remainder, " to plan, lay out and build a public cemetery; which cemetery is to be known as ' The Merrit Public Cemetery;' upon the farm of land upon which I now live on Ridge Stree, in the Towns of Rye and Harrison, Westchester County, New York, for the purpose of providing plots or places wherein the people of the Village of Port Chester and vicinity may be buried without charge as soon as they, my said charity trustees, or a majority of them shall see fit; " (2) to use the income " forever thereafter " to support the cemetery, to build one or more vaults therein, to keep in good condition a small burial plot wherein

his parents and other relations are buried.  The testator enjoins
" Courts of Law and Equity " to construe the will so as to ap-
portion his estate to such uses, and " that the same should in no
case for want of legal form or otherwise, be so construed, that
my relations or any other persons should heir, possess or enjoy
my property, except in the manner and for the uses and pur-
poses hereinabove specified."   The will was admitted to pro-
bate upon the petition of John M. Lyon, who became sole execu-
tor, and who, with George A. Slater, was appointed committee
of the person and the estate of the testator's sister, Emma E.
Merritt, who was his sole next of kin and heir at law, and who
was adjudged incompetent on June 3, 1914.   There were found
eleven instruments executed by the sister to the testator; two
purporting to convey four parcels of land, since appraised at
$88,900, and nine purporting to assign bonds and mortgages
aggregating $52,800, but at the instance of the committee they
were all adjudged void as procured fraudulently.   It is shown
by the final account of the executor that the testator's entire
net estate is $15,314.16, subject to some deductions for costs
of administration and other purposes, leaving a balance of
about $12,000.   It appears now (1) that the testator did not
own the land which he directed to be converted into a cemetery;
(2) that there are no rents to lay out and to support any ceme-
tery; (3) that the only personal estate from which income could
arise for that purpose is now about $12,000.   Upon the final
accounting the executor asked for a construction of the will so
far as it would create a charitable use, and from the decree that
the provisions were valid the executor and committee appeal.
Had the testator owned the property the question would fall
within Inglis v. Trustees of Sailor's Snug Harbour (28 U. S.
[3 Pet.] 99) and Trustees of Sailor's Snug Harbor v. Carmody
(211 N. Y. 286), provided a charitable use for a public ceme-
tery is authorized by law.   Section 13a of the Personal Property
Law, and section 114a of the Real Property Law, relate to pri-

vate burial lots—but not to public cemeteries. But the land which underlay the testator's project was not his property. He had conveyances of it, and was the apparent heir to it. But his tenure, if under the deeds, had been declared fraudulent, and his succession was defeated by his sister's survival. The same is true of the greater part of the personal estate. There remains nothing but his intention to provide a free public burial place for the people in the environment of his residence, irrespective of their condition. I accept, with much hesitation, the conclusion of Surrogate SAWYER's opinion that the purpose is charitable. In any case, it would be a good trust as to the family lot. The intended method of realizing the purpose largely failed. There cannot be such a cemetery as the testator planned. There is left a small sum of money. The trustees can and must invest it as the will directs. · With the income they can buy burial privileges in some cemetery, but they cannot maintain a public cemetery. The money cannot be regarded as a free public burial fund for all the people of Port Chester. The testator's vision has vanished. What he conceived is no longer conceivable. At such a time, resort is had to present section 113 of the Real Property Law, relating to " Grants and devises of real property for charitable purposes." It treats of indefiniteness or uncertainty of the persons designated as beneficiaries. Such is not the present difficulty. The statute has to do with circumstances " changed *since* the execution of an instrument containing a gift, grant or devise to religious, educational, charitable or benevolent uses," so " as to render impracticable or impossible a literal compliance with the terms of such instrument " and enables the court upon the application of the trustee or of the person or corporation having the custody of the property to direct that the gift " shall be administered or expended in such manner as in the judgment of the court will most effectually accomplish the general purpose of the instrument, without regard to and free from any specific restriction, limi-

tation or direction contained therein." The circumstances have not changed since the testator made his will, except that it has been adjudged that he fraudulently appropriated to a public cemetery what has been restored to the rightful owner. The court cannot carry out the general purpose of the testator, because it has been adjudicated that the property he appropriated to it was fraudulently acquired and converted in intention to the use, or, in other words, because the general purpose was to make his sister's farm the essential element of his scheme for a public cemetery and to support it largely with her money. There is a fragment of property left. It cannot be used to " accomplish the general purpose of the instrument." At this time whatever could be done would not be even a semblance of the testator's proposal. But decision now would be premature. It is not for the surrogate or this court to decide whether the Supreme Court will execute the trust in some degree. The final direction rests with the Supreme Court upon the application of the charity trustees. That can be done when the life estates expire. Circumstances may change. The incompetent may be restored, and elect to take under her brothers' will. Then the testator's plan could be executed. Meantime, the committee should not accept the provision made for her under the will. She cannot accept its benefits and reject it otherwise, and they should not elect for her.

The decree should be amenable to whatever disposition the Supreme Court may make of the question. In case it should refuse to administer the trust, the decree should be amendable to make disposition of the property. The decree, modified to meet such a possible exigency, is affirmed, without costs.

JENKS, P. J., CARR, MILLS and RICH, JJ., concurred.

Decree of the Surrogate's Court of Westchester county modified in accordance with opinion, and as modified affirmed, without costs.