ESTATE OF CAROLYN E. GRAY, DECEASED, THE NEW YORK TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109237. Promulgated June 11, 1943.

*William E. Birdsall, Esq.*, and *Adrian W. DeWind, Esq.*, for the petitioner.

*Clay C. Holmes, Esq.*, for the respondent.

## OPINION.

HARRON, *Judge:* The facts have been stipulated, the material part being as follows:

The petitioner, the New York Trust Company, 100 Broadway, New York, New York, is the duly appointed, qualified and acting Executor of the last will and testament of Carolyn E. Gray, deceased, who died a resident of the City, County and State of New York, on December 29, 1938.

Said last will and testament of said decedent, * * * was duly admitted to probate by the Surrogate's Court of New York County on February 23, 1939, at which time petitioner was appointed and duly qualified as Executor thereof.

Said last will and testament, by Articles Sixth and Seventh thereof, created trusts of the residuary estate of said decedent for the benefit of certain named persons for their lives and upon their deaths provided that the principal thereof should be paid, "to The Presbyterian Hospital in the City of New York, to be added to, or used to create, a fund known as 'The Kimber-Gray Fund', the net income of which is to be used by the Director of Nursing Service of said Hospital, or her successor, to provide special nurses and special nursing care for nurses who are graduates of a recognized school of nursing and are patients of said hospital".

Said The Presbyterian Hospital in the City of New York is a corporation organized and operated exclusively for charitable purposes as set forth in Section 303 (a) (3) of the Revenue Act of 1926, as amended, (now Section 812 (d) of the Internal Revenue Code), no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation. Said hospital has been exempted, by ruling of the Commissioner of Internal Revenue, from payment of United States income taxes, said exemption being granted to it as a corporation organized and operated exclusively for charitable purposes and complying with all other requirements for such exemption under Section 101 (6) of the Internal Revenue Code and corresponding Sections of prior Revenue Acts.

Under the corporate powers granted to said hospital by Article II of its Constitution one of its purposes is to afford nursing care to sick or disabled persons of every creed, nationality and color. The nursing care provided by said hospital is now and has been for many years administered by a Director of Nursing Service of said hospital, who is an employee thereof appointed by said hospital. * * *

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The present cost to each patient of a special nurse and special nursing care at The Presbyterian Hospital in the City of New York is at the rate of $133. a week. This cost has not varied substantially since the time of decedent's death or for several years prior thereto.

Special nurses and special nursing care are commonly utilized in the treatment of many types of diseases and injuries, and particularly in the treatment of surgical cases.

The value, on the date of the death of said decedent, Carolyn E. Gray, of the aforesaid remainder interests of said hospital in the principal of said trusts created by Articles Sixth and Seventh of said last will and testament of said decedent was $71,288.97.

By Article Ninth of said last will and testament, said decedent directed "that all estate, inheritance, legacy, succession and transfer taxes that may be assessed or charged upon any legatee or devisee under this Will or any Codicil thereto,

or upon any estate or legacy which passes hereunder, be paid as expenses of administration and charged to and paid out of my general estate".

On or about March 23, 1940, petitioner herein, as Executor aforesaid, filed with the Collector of Internal Revenue, Second New York District, Customs House, New York, New York, an estate tax return for the estate of said decedent, on Form 706. In said return said Executor did not elect to have the property in the gross estate valued in accordance with the optional method authorized by subdivision (j) of Section 302 of the Revenue Act of 1926, as added by Section 202 of the Revenue Act of 1935 (now Section 811 (j) of the Internal Revenue Code). The tax shown to be due upon said return was $13,446.10. Said sum was duly paid by petitioner to said Collector of Internal Revenue on or about March 23, 1940.

In said estate tax return, the value, on the date of decedent's death, of the aforesaid remainder interests in the trusts of the residuary estate of said decedent, created by Articles Sixth and Seventh of said Will, was shown to be $71,288.97. By application of a mathematical formula, set forth in said return, which was designed to reduce said value by the amount of all estate, succession, legacy and inheritance taxes paid upon said estate and the property included therein, or the transfer thereof or succession thereto, said figure was reduced to $66,285.73 and said sum of $66,285.73 was claimed as a deduction in Schedule N of said return as a charitable bequest to said The Presbyterian Hospital in the City of New York. * * *

Upon the audit of said estate tax return there was disallowed as a deduction the whole of the aforesaid sum of $66,285.73.

* * * * * * *

On or about December 12, 1941, petitioner duly filed a claim for refund of said estate tax in the amount of $776.20 * * *. Said refund claimed was made up of two parts: (a) a claim for refund of $770.49 based upon the allegedly erroneous reduction made by petitioner in said estate tax return of the amount claimed as a charitable deduction for said remainder interests of The Presbyterian Hospital in the City of New York in the aforesaid residuary trusts, from the value on the date of decedent's death of $71,288.97 to the sum claimed on the return of $66,285.73; (b) a claim for refund of $5.71 based on the aforesaid readjustments of valuations and debts which decreased the net taxable estate of decedent as shown in said estate tax return by $37.07.

If the deduction of $66,285.73 for charitable bequests, claimed on said estate tax return and disallowed by respondent, was properly disallowed there exists a deficiency of $10,326.80 in the Federal estate tax due on the estate of said decedent.

If said deduction of $66,285.73 was properly claimed and is allowable, there exists an overpayment of $5.71 in the said Federal estate tax.

* * * * * * *

The value of the remainder interests is deductible from the value of the gross estate of the decedent as a charitable bequest.

In the estate tax return the executor carried the value of the remainder interests at $71,288.97. By applying the so-called "Greeley formula," the value of the remainder interests, less the amount necessary to pay all inheritance taxes on the estate, was computed to be $66,285.73. The executor deducted this amount from the value of the gross estate as a charitable bequest.

Respondent determined "that the bequest to 'The Kimber-Gray Fund' is not an allowable charitable deduction as it does not come

within the provisions of section 812 (d) of the Internal Revenue Code." Respondent added the amount of $66,285.73 to the value of the gross estate.

The applicable statute is section 303 (a) (3) of the Revenue Act of 1926, as amended by section 807 of the Revenue Act of 1932 and section 406 of the Revenue Act of 1934, which appears as section 812 (d) of the Internal Revenue Code.[1]

When this proceeding was heard, there was pending an appeal to the Supreme Court from the decision of the United States Circuit Court of Appeals in *Northern Trust Co.* v. *Harrison*, 125 Fed. (2d) 893. The Supreme Court rendered its decision on January 11, 1943, in *Harrison* v. *Northern Trust Co.*, 317 U. S. 476. The parties are agreed that the decision of the Supreme Court in that case is determinative as to the amount of the present value at the date of the death of the decedent of the "vested charitable remainders" under decedent's will with respect to the amount actually passing under the residuary bequests after provision for inheritance taxes on the estate. For purposes of the claimed deduction in this proceeding, $66,285.73 is the correct net value of the remainder interests. This is the amou..t which the executors deducted in the estate tax return and which respondent disallowed and added to the value of the gross estate.

The only question for determination is whether the net value of the "vested charitable remainders" is deductible from the value of the gross estate as a charitable bequest within the purview of section 303 (a) (3), as amended.

Petitioner contends that the bequests of the remainder interests were to and for the use of the hospital; that the hospital was a corpora-

---

[1] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(d) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—The amount of all bequests, legacies, devises, or transfers, to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, or to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. If the tax imposed by section 810, or any estate, succession, legacy, or inheritance taxes are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this paragraph, then the amount deductible under this paragraph shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes. The amount of the deduction under this subsection for any transfer shall not exceed the value of the transferred property required to be included in the gross estate.

tion organized and operated exclusively for charitable purposes; that the purpose for which these bequests are to be used is one of the corporate purposes; that for these reasons the bequests comply with all the conditions of the statute, and, therefore, are deductible from the value of the gross estate as charitable bequests; that, in addition, the particular and specified purpose for which these bequests are to be used is in and of itself charitable as a matter of law and they are therefore deductible under the statute.

The parties are agreed that the Presbyterian Hospital in the City of New York is a corporation organized and operated exclusively for charitable purposes. One of its purposes is to afford nursing care to sick or disabled persons. However, respondent contends that, due to the terms of the will, the bequests were not given outright to the hospital to use as they thought best, but that the remainder interests were given to the hospital as a trustee of a fund the net income of which was directed to be used for a certain definite purpose. Respondent contends that, therefore, the character and purpose of the fund must be ascertained from the terms of the will; that, as the will did not restrict the benefits accruing from the fund to needy or destitute graduate nurses, the purpose of the bequests was not exclusively charitable; and that, therefore, the bequests, not having met the requirements of the statute, are not deductible from the value of the gross estate as charitable bequests within the purview of section 303 (a) (3), as amended.

The decedent's will created certain trusts the net income of which was to be paid to certain life beneficiaries. Upon the termination of the life estates the will provided that the principal of the trusts was to be paid to the Presbyterian Hospital in the City of New York and used to create, or supplement, a fund known as "The Kimber-Gray Fund." The income of the fund was to be used by the director of nursing service for the purpose of providing special nurses and nursing care for graduate nurses who were patients of the hospital. The director of nursing service is an employee of the hospital and administers the nursing care as provided by the hospital. The cost of such nursing care is approximately $133 a week. The decedent's will did not prescribe any directions as to how the recipients of the benefits arising out of the bequests to the hospital were to be chosen, nor were such benefits restricted to needy or destitute graduate nurses.

If we adopt, for purpose of argument, respondent's contention that the bequests of the remainder interests to the hospital did not constitute bequests to a charitable corporation, as such, but rather created a trust of which the hospital was to act as trustee, we must determine whether the purpose for which this trust was created was an exclusively charitable purpose.

A definition of the term "charitable" which is frequently found in estate tax cases [2] is as follows:

* * * A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature.

\* \* \* \* \* \* \*

It is apparent from the above definition that a trust which is created for the purpose of providing nursing care in such way as to be charitable in nature is a charitable trust. However, respondent's real objection to the allowance of the bequests as charitable bequests is that any graduate nurse, regardless of her ability to pay for such services, may receive the benefits ensuing from the bequests. Respondent, therefore, concludes that the purpose of the trust is not an "exclusively charitable" purpose.

In *In re Skuse's Estate*, 165 Misc. 554; 1 N. Y. S. (2d) 202, the court held that a trust was charitable which created a fund to provide for the "medical and/or surgical care of any member of the Customs Service in the Port of New York, and the employees of the Atlantic Savings and Loan Association." The court, *inter alia*, stated:

Nor, would it seem, could it be said that any clear line is capable of demarkation as to the requisite financial status of a particular recipient in order to justify the characterization of the benefit to him as charitable. "Need" is a wholly relative term, the conception of which must, within reasonable limits, vary with the personal situation of the individual employing it. Even "poor needlewomen (seamstresses) whose toil is so poorly requited," *Manley* v. *Fiske*, 139 App. Div. 665, 666, 124 N. Y. S. 149, 150, affirmed 201 N. Y. 546, 95 N. E. 1133, might, if employed, be deemed fortunate and happy persons by one out of work and with no means of subsistence.

Trusts have been upheld as charitable whose benefits were limited to persons living in a certain locality. *Starr* v. *Selleck*, 145 App. Div. 869, 874, 130 N. Y. S. 693, affirmed 205 N. Y. 545, 98 N. E. 1116, *Matter of Miller*, 149 App. Div. 113, 125, 133 N. Y. S. 828; *Matter of Rasquin*, 159 App. Div. 845, 847, 144 N. Y. S. 988, following a specified trade or occupation, *Manley* v. *Fiske*, supra; *Trustees of Sailors' Snug Harbor in City of New York* v. *Carmody*, 211 N. Y. 286, 105 N. E. 543, or employed by a named corporation, *Matter of Westinghouse's Estate*,

---

[2] *Jackson* v. *Phillips*, 14 Allen 539, 556 (Mass. 1867). Also, see Restatement of the Law of Trusts, sec. 372, where it is stated that "A trust for the promotion of health is charitable." In the comment under that section, the following appears:

\* \* \* \* \* \*

"c. * * * A trust for the promotion of health is charitable whether it extends to all persons, or is limited to those residing in a particular district, or those of a particular class, provided that the class is not so small that the relief of the class is not of benefit to the community. Thus, a trust to establish or maintain a hospital for the employees of a particular railroad is charitable. So also, a trust to provide medical assistance for persons of moderate means, such as clerks or teachers, is charitable."

156 Misc. 320, 321, 281 N: Y. S. 603, *Delehanty S.* [*sic*] affirmed 248 App. Div. 568, 288 N. Y. S. 1084, leave to appeal denied 272 N. Y. 678, wherefore, it would seem, that a gift to any reasonably numerous aggregate of persons unrelated to the testator by blood or marriage would, of itself, usually give rise to an inference of a charitable or benevolent purpose on the part of the donor.

In *Hart* v. *Taylor*, 301 Ill. 344; 133 N. E. 857, the decedent bequeathed certain property which was to be used for purchasing a suitable site in the village of Libertyville and for erecting. thereon a hospital, to be known as the Condell Memorial Hospital, "for the use of the inhabitants of Libertyville and vicinity, to which hospital all licensed physicians shall have access for themselves or their patients." The court, in holding that the bequest was a charitable gift, stated:

Gifts for the purpose of establishing or maintaining hospitals for the benefit of the sick, injured, infirm, needy, or other persons in unfortunate circumstances are recognized by the courts as charitable. A gift for such a purpose is not invalid as a charity because it does not impose poverty as a condition for admittance or because the patients who have means are expected to contribute to its support and development. * * *

In *Harrison* v. *Barker Annuity Fund*, 90 Fed. (2d) 286, the question involved was whether a corporation organized for the purpose of accepting, administering, and disbursing such funds which may be given to it for charitable, religious, or educational purposes was a corporation exempt from income and capital stock taxes. The greater portion of the corporation's income was paid to charitable corporations. A smaller portion was used to pay pensions to aged employees of the Haskell & Barker Car Co. The court in holding the corporation was exempt, *inter alia*, stated:

Appellant insists that appellee was not operated exclusively for exempt purposes. But we have observed that many purely charitable organizations were beneficiaries in the fund and that the only question as to exemption of all funds is that urged as to the sums paid out in the form of annuities. And we have seen that the purpose of the latter payments was praiseworthy and the inevitable effect the encouragement and promotion of habits upon the part of employer and employees, tending to the greater good of the whole body politic. The fact that some annuitant may not need the pension is immaterial, * * *

Thus, from the above decisions, if the class which is to receive the benefits is not so small that the community does not benefit from the aid given to them and if the aid to be given relates to the relief of the sick or aged, etc., the gift does not lose its character as a gift for a charitable purpose merely because all the recipients do not have to be paupers.

Petitioner argues that it is presumed that those members of the class of beneficiaries who are in need will be given first consideration by the hospital. Petitioner cites *Porcher* v. *Cappelmann*, 187 S. C. 491; 198 S. E. 8, as authority for this argument. In this case, the decedent's will created a trust to provide "assistance in the City of Columbia,

S. C., to crippled children, in the provision of medical and surgical attention to such children  *   *   *." The court held that the trust was a charitable trust, and, *inter alia,* stated:

That the present trust is for a public charity seems scarcely open to serious argument. A trust for the prevention, cure or treatment of disease, or otherwise for the promotion of health is charitable. 10 Amer. Jur., title Charities, Sec. 71.

Some suggestion was made during the argument that the trust was not charitable because under the terms of the trust clause the trustee could render assistance to children who had independent means as well as to those who are poor. Presumably the trustee would give the first consideration to those who are without financial means to secure the relief or aid contemplated by the testatrix. If those most in need are taken care of, what matters it if those who are able to pay should also share in the testatrix's bounty? Furthermore, a trust for the prevention of disease or otherwise for the promotion of health is charitable even if the carrying out of the trust benefits the rich as well as the poor. A trust of this character is none the less charitable in the eye of the law because incidentally it benefits the rich as well as the poor, as indeed every charity that deserves the name must do, either directly or indirectly. 10 Amer. Jur., title Charities, Sec. 52.

See also, Federal Estate and Gift Taxation, Paul, sec. 12.19, p. 668, where it is stated:

*  *  * While the term "exclusively", would seem to be synonymous with "solely", the courts have interpreted the word much more liberally, and have held merely that the income of an organization must be devoted "exclusively" in the sense of not "incidentally" to religious, charitable, scientific, or educational purposes. A primary devotion is enough; totality of devotion is not required. The general or predominate purpose is to be considered. *  *  *

In view of the above mentioned authorities, we can not agree with respondent's contentions. Graduate nurses constitute a large class of workers in our society. The customary rate of compensation for their services is known to be moderate. Petitioner introduced in evidence a copy of a printed report of the Public Affairs Committee, Inc. This report, which was written by Beulah Amidon, was based on research materials prepared by the American Nurses Association, the National League of Nursing Education, and the National Organization for Public Health Nursing. This report reveals that about 75 percent of nurses are paid approximately $1,300 a year, and the balance of the nurses are paid up to $2,544 a year. It is a reasonable conclusion that many graduate nurses would be unable to pay for special nursing care for any length of time if the occasion arose where such care was necessary. We think it requires no argument to show that the provision for such care for graduate nurses is beneficial to society. The fact that some recipients of the benefits of the trust may not be needy or destitute is not sufficient, in itself, to hold that the trust was not created exclusively for a charitable purpose. The purpose of the trust was exclusively charitable, regardless of the fact that the benefits thereof may accrue to some persons who are not extremely poor.

In addition, we are of the opinion that, as the remainder interests were to be paid to the hospital, which, admittedly was organized and operated exclusively for charitable purposes, and, as the net income from the remainder interests was to be used by the hospital for one of its corporate purposes, to give nursing care, the bequests here meet the requirements of the statute. In *Young Men's Christian Association Retirement Fund, Inc.*, 18 B. T. A. 139, 146, a case involving the question whether an organization was an exempt corporation under the income tax laws, it was stated: "We do not think that the mere restriction of the beneficiaries of an otherwise charitable corporation to a designated group or class is sufficient ground upon which to deny exempt classification." Upon the same principle, it would appear that the restriction of the nursing care, which accrues out of the bequests, to graduate nurses is not sufficient to deny the purpose of the bequests as being one of the purposes of the hospital.

It is held that the value of the remainder interests is deductible from the value of the gross estate as a charitable bequest.

Under the above holding there is no deficiency in estate tax, and there is an overpayment of $5.71.

*Decision will be entered for the petitioner.*