In the Matter of MICHAEL P. GRACE, II, Respondent, *v.* GRACE INSTITUTE, Appellant.

In the Matter of CORINNE GRACE, Respondent, *v.* GRACE INSTITUTE, Appellant.

First Department, April 14, 1966.

*Raymond L. Falls, Jr.,* of counsel (*Floyd Abrams* with him on the brief; *Cahill, Gordon, Reindel & Ohl,* attorneys), for appellant.

*Orrin G. Judd* of counsel (*Carl Rosen,* attorney), for Corinne Grace, respondent.

*Lawrence S. Timen* of counsel (*Jonas Ellis* with him on the brief; *Emil K. Ellis,* attorney), for Michael P. Grace, II, respondent.

BASTOW, J. This proceeding was instituted seeking judicial review and annulment of determinations made by the life members and trustees of appellant, Grace Institute, whereby petitioner was removed as a life member and trustee of the Institute.

Special Term directed a trial of two issues — whether or not the life members and trustees (1) found in good faith that valid cause existed for such removal and (2) afforded petitioner a reasonable opportunity to be heard.

Grace Institute was incorporated by an act of the Legislature (L. 1897, ch. 285) for the purpose of furnishing women and girls instruction in trades and occupations and in branches of domestic arts and sciences "and to afford such protection, instruction and assistance to young women to the end that they may become useful and virtuous citizens." Three named members of the Grace family and their successors were constituted a body corporate. These persons and their successors were to remain as members until their "death, resignation or otherwise" and thus enjoyed the status of life members with the further power to appoint a successor by an instrument in writing. All the powers and privileges of the corporation were to be exercised by trustees consisting of the three life members and a variable number of other persons selected by the life members. The individuals so chosen as trustees held office until the next annual meeting as distinguished from the life members who also served as life trustees.

At the time of the holdings of the meetings with which we are concerned the life members and life trustees were petitioner, one of his brothers and one Pyne. There were also six additional selected trustees making a total of nine trustees.

Pertinent to a proper determination of the issues presented is a further consideration of this special enactment of 1897. There were granted to the corporation all the powers and privileges conferred by chapter 35 "of the general laws known as the General Corporation Law" (L. 1892, ch. 687, as amd.) but no reference was made to the Membership Corporations Law (L. 1895, ch. 559, as amd.).

It is a familiar rule of statutory construction that courts will look at the contemporary history of a statute and the historical background thereof as an aid in its interpretation. These aids will show the circumstances under which the statute was passed and the mischief at which it was aimed. (2 Sutherland, Statutory Construction [3d ed.], § 5002.) A brief study of judicial history contemporary to the enactment of the statute before us makes it clear that the intent of the Legislature was not to incorporate a mere membership corporation.

In 1866 *Bascom* v. *Albertson* (34 N. Y. 584) was decided. This decision expressly overruled the holding in *Williams* v. *Williams* (8 N. Y. 525) and held that certain bequests in trust were invalid. The conclusion was thus stated (pp. 620–621): "Those

opposed to the innovation [of testamentary donations for meritorious objects] believe it to be the law of this state, as it certainly has been its policy, that funds irrevocably dedicated to purposes of charity, are to be administered through agencies and organizations sanctioned by legislative authority, and not by the intervention of private trustees, deriving perpetual succession through the will of a testator, and claiming immunity from the operation of general laws."

This continued to be the law of the State for nearly 30 years (Scott, Charitable Trusts in New York, 26 N. Y. U. L. Rev. 251–265) and culminated in *Tilden* v. *Green* (130 N. Y. 29). (Ames, The Failure of the " Tilden Trust ", 5 Harv. L. Rev., 389–402.) (See, also, 4 Scott, Trusts [2d ed.], § 348.3.) Soon after that case was decided the Legislature enacted chapter 701 of the Laws of 1893 (commonly known as the " Tilden Act ") the provisions of which are now substantially found in section 113 of Real Property Law and section 12 of Personal Property Law. In construing the 1893 enactment the Court of Appeals " held that the legislature intended by that law to restore the law of charitable trusts as declared in the case of *Williams* v. *Williams* (8 N. Y. 525), which holds that the law of charitable uses as recognized in England prior to the Revolution was in force in this state." (*Trustee of Sailors' Snug Harbor* v. *Carmody,* 211 N. Y. 286, 298.) But it was not until 1899 when *Allen* v. *Stevens* (161 N. Y. 122) was decided that all doubts were laid to rest. There a divided court sustained the validity of a testamentary disposition although under the law prior to the passage of the Tilden Act it would have been void because (1) of the indefiniteness of the beneficiaries and (2) although intending to found a permanent charity, the testator did not direct the formation of a corporation within two lives in being to take over the trust property.

It is against this judicial historical background that we examine the 1897 statute organizing Grace Institute. The view of the members and trustees thereof, other than petitioner, that the Institute is a membership corporation is erroneous. The provisions of the then Membership Corporations Law were ignored by the Legislature and the special act made reference only to the General Corporation Law. We have no difficulty in concluding that the Institute was incorporated to comply with the then current judicial view (subject to the impact of the Tilden Act) that the only method of devoting property to charitable purposes was to give it to a charitable corporation. The Institute was *sui generis* and more nearly resembled a charitable trust than a membership corporation as many of the

principles applicable to such trusts are applicable to charitable corporations (4 Scott, Trusts [2d ed.], § 348).

This misapprehension of the character of the corporation has led all parties astray and resulted in the framing for trial of at least one irrelevant issue. Authorities relied on by appellant that a membership corporation has a natural right of self-preservation and the inherent power to expel its members for disloyalty (*Bockman* v. *American Inst. of Decorators,* 7 A D 2d 495, affd. 7 N Y 2d 850) have no pertinency. On the other hand we disagree with the view of petitioner that never nor under any circumstances might a life member or life trustee of the Institute be removed.

The duties and responsibilities of the life members and trustees of this charitable corporation may be analogized to those of trustees of an *inter vivos* trust. This view is fortified by a further provision of the 1897 statute incorporating the Institute which vested in the Supreme Court supervisory power over the corporation with further power in the court or either branch of the Legislature to compel from the trustees '' a full account of the execution of their trust ''.

The general principles have been frequently enunciated for the removal of the trustee of a charitable trust (4 Scott, Trusts, § 387) and of a private trust whether testamentary or *inter vivos* (*ibid.*, vol. 1, §§ 107, 107.1, 107.2; Restatement, Trusts 2d, § 107). These principles lay down guidelines herein for the area of judicial review. The triable issue is not, as Special Term concluded, whether the members and trustees found in good faith that valid cause existed for petitioner's removal but instead whether petitioner acted in good faith and was loyal to the corporation. Moreover, a course of conduct launched in good faith by petitioner might be found to be reckless and inimical to the interests of the Institute. The fact that there may have been hostility and friction between petitioner and the other trustees is not necessarily controlling. The ultimate issue is whether the facts are such that the continuance of petitioner as a member and trustee would impair or obstruct the activities of the Institute and the purposes for which it was organized.

We conclude that trial issue numbered one should be modified to read as follows: '' 1. Whether or not petitioner (a) in taking the various actions and doing the several acts set forth in the charges acted in good faith and was loyal to the corporation and (b) if taken and done in good faith whether or not the acts and actions were so reckless and inimical to the interests of the Institute that its corporate activities were substantially obstructed or impaired.''

If this issue and the remaining second issue should be decided adversely to petitioner the trial court should proceed to decide the further issue reserved in the order as to the right of petitioner pursuant to the provisions of the incorporating statute to appoint his successor. We do not reach or pass upon that question.

The order should be modified in accordance with this opinion and, as modified, affirmed, without costs or disbursements.

BOTEIN, P. J., EAGER and STEUER, JJ., concur.

Order, entered on September 22, 1965, unanimously modified in accordance with the opinion of this court filed herein and, as modified, affirmed, without costs or disbursements. Settle order on notice.