S. Samuel Di Falco, S.
The testator died in 1801 leaving a will which was duly probated and which bequeathed his residuary estate to trustees with direction that the income be employed to erect upon the testator’s land an asylum or hospital to be called “ The Sailors’ Snug Harbor ” for the purpose of maintaining and supporting aged, decrepit and worn-out sailors. The will provided: ‘ ‘ And it is my intention that the institution hereby directed and created should be perpetual, and that the above-mentioned officers for the time being and their successors, should forever continue and be the governors thereof, and have the .superintendence of the same; and it is my will and desire that if it cannot legally be done, according to my above intention, by them, without an Act of the Legislature, it is my will and desire that they will, as soon as possible, apply for an Act of the Legislature to incorporate them for the purposes above specified. And I do further declare it to be (my) will and intention that the said rest, residue and remainder of my real and personal estate should be, at all events, applied for the uses and purposes above set forth; and that it is my desire all courts of law and equity will so construe this, my said Will, as to have the said estate appropriated to the above uses, and that the same should in no case, for want of legal form or otherwise, be so construed as that my relations, or any other persons, should heir, possess or enjoy my property, except in the manner and for the uses hereinabove specified.”
The trustees applied to the Legislature of the State of New York for a special act of incorporation which was passed on February 6,1806 (L. 1806, ch. 4) and created a corporation with the name “ The Trustees of the Sailors’ Snug Harbor in the City of New York.” In 1828 the Legislature adopted a special act (L. 1828, ch. 276) which authorized the corporation to lease the testator’s real property and to acquire land, with the approval of the Court of Chancery, upon which to build the Harbor 1 ‘ upon the island of New York, or adjacent thereto, and fronting upon the North or East River, or in the vicinity thereto ”. Later the institution was erected on Staten Island.
Application now is made for permission to dispose of the land and buildings on Staten Island and to transfer the institution to North Carolina. It is alleged that changes of circumstances rendered literal compliance with the testator’s will impracticable, if not impossible, and the proposed change of location is essential to effectuate the purposes of the testator.
*121 The Attorney-General of the State of New York has filed an answer alleging as an affirmative defense that this court does not have jurisdiction to entertain the petition. The Attorney-General does not dispute the power of this court to authorize a sale of the Staten Island property or that the court can authorize the institution to move to a new site in this vicinity. However, the Attorney-General challenges the jurisdiction of the court to authorize a removal of the institution to a location not within the boundaries set by the 1828 legislation. The position of the Attorney-General is that only the Legislature can permit the geographical change sought in the present petition.
The parties have presented to the court the issue as to the sufficiency of this defense and accordingly this opinion is concerned with that issue only. The granting of the petition insofar as it seeks removal of the institution to North Carolina would require development of facts at a hearing.
In Trustees of Sailors’ Snug Harbor v. Carmody (158 App. Div. 738, affd. 211 N. Y. 286), the trustees sought authority from the Supreme Court to depart from the language of the will and to sell or mortgage certain of the land formerly owned by the testator and then in the ownership of the trustees. Were this authority to be granted, it would be a second deviation from the precise text of the will, the first departure having been accomplished by the Legislature in 1828 in permitting the erection of the institution on land other than that upon which the testator had resided. In the 1913 action, the then Attorney-General, Thomas Carmody, urged that the Supreme Court was without authority to grant the required permission which, contended the Attorney-General, could be obtained only by recourse to the Legislature. That is the precise position which the Attorney-General assumes in the present proceeding.
The decision in Trustees of Sailors’ Snug Harbor v. Carmody is controlling here inasmuch as, upon this particular point, the present contention of the Attorney-General is the same as that urged in the earlier decision and the reasoning of the Appellate Division and the Court of Appeals is fully applicable to the existing situation. In the Carmody case, Judge Hotchkiss traced the law of charitable trusts and his efforts in that regard were characterized by the Court of Appeals as an exhaustive research which rendered it unnecessary for the higher court to undertake the same task. With this precedent, it will suffice for this court to summarize the conclusion reached in Carmody (supra) with an appropriate reference to more recent legislative enactments.
*122 In the early history of this State, charitable trusts had an unfortunate career. The first Constitution of New York provided for the adoption of English common and statutory law, but in 1788 a statute was passed which provided that none of the statutes of England or Great Britain should be considered as laws of this State. The effect of this enactment was to repeal the Statute of Elizabeth, which was concerned with charitable uses, and to doom charitable trusts to failure. Since the testator’s will was drawn against this background, his sagacity in providing for resort to the Legislature and the seeking of a corporate charter is apparent. At that time the corporate device might well have been the only method of effectuating his purposes.
Public reaction to the failure of Samuel J. Tilden’s attempted testamentary disposition of $5,000,000 for charitable purposes (Tilden v. Green, 130 N. Y. 29) resulted in the passing in 1893 of the so-called Tilden Act which restored to the courts the power once exercised by the Court of Chancery in sustaining and enforcing trusts for charitable purposes. The Tilden Act became section 12 of the Personal Property Law and section 113 of the Real Property Law and for some time these statutes vested authority in the Supreme Court only. Today, EPTL 8-1.1 governs and provides that, if the charitable disposition is made by will, the Surrogate’s Court has jurisdiction.
“ The decision of the United States court in the Inglis case [Inglis v. Trustees of Sailor’s Snug Harbour, 3 Peters 99], and the several decisions of this court referred to subsequent to the enactment of the 1 Tilden Act ’ so called, renders inevitable a conclusion that under the will of Mr. Randall a valid and enforceable trust was created, and the property bequeathed and devised therein became vested in the trustees named in said will and their successors.” (Trustees of Sailors’ Snug Harbor v. Carmody, 211 N. Y. 286, 298, supra.)
In the Carmody case (supra) it was held that, by reason of the legislative changes effected by the Tilden Act and later statutes extending that enactment, the trustees of this testator were not required to seek relief by legislative amendment of the corporate charter and that jurisdiction to effectuate testator’s purposes rested in the Supreme Court. Today, by force of EPTL 8-1.1, this jurisdiction is vested in the Surrogate’s Court.
The defense challenging the jurisdiction of this court is stricken. The proceeding will be set for hearing upon the issue of removal of the institution to North Carolina and the attorneys mil be advised of the hearing* date.