Millard L. Midonick, S.
Attorney for objectant moves by letter dated March 27, 1972, for reconsideration of my decision of March 14, 1972, published in the New York Law Journal on March 24, 1972. Such reconsideration is hereby granted, and the findings are hereby corrected insofar as contained in a revised decision reading as follows:
A hearing was held on January 21, 1972. The ultimate issue is who is the widow of the intestate decedent, and therefore entitled to letters of administration and a lifetime pension. The petitioner is the wife of decedent by his first marriage. The decedent later married the objectant in the City of New York. Both claim to be decedent’s widow; upon this decision depends who is entitled to a pension owing to the decedent’s widow for her lifetime.
The petitioner married the decedent in 1932. She bore him three children, all of whom are adult. Since 1936 she has carried on a proceeding against him in the Domestic Relations Court of the City of New York (now Family Court of the State of New York), for support of herself and of the children while they were minors. The order of support for her has always been as a proper wife on a means basis.
In March, 1953 the decedent obtained a “ unilateral ” divorce against petitioner for “ desertion ”, given by a court in Newport News, Virginia. The decree of divorce was uncontested, the petitioner here not appearing there, being unrepresented and not served in or residing in Virginia. The petitioner has not remarried. The Virginia decree of divorce recites that jurisdiction of the marital res depended upon a finding that the decedent resided in Virginia during the year next preceding the March 1953 decree. Petitioner did receive notice of the Virginia divorce proceeding in 1952 while she and decedent were *632 domiciled in New York. She had ho duty to appear in or travel to Virginia to contest this divorce, unless at least the decedent was domiciled there, which he was not.
An issue of bona fide domicile is open to attack on the ground that the decedent’s proof of domicile was fraudulent, notwithstanding the Full Faith and Credit Clause of the Constitution. Such an attack may be brought by a spouse who neither appeared, nor was served in, nor was a domiciliary of the State in which the divorce was granted (Cook v. Cook, 342 U. S. 126 [1951]).
On the basis of this 1953 Virginia divorce decree, objectant who also claims to be decedent’s widow, married the apparently divorced decedent 11 months later (1954) in the City of New York, and claims to have been validly married to decedent until his recent death, and therefore to be his legitimate widow. Seven months after this marriage the objectant bore a child by the decedent.
About 1955 and thereafter, in pursuing her rights and their enforcement in the New York Family Court and its predecessor, petitioner herein was faced with the defense of the divorce, and the decedents change of circumstances by reason of the second marriage of the decedent to the objectant and of the child of that marriage. The second marriage was not recognized as valid for Family Court (then Domestic Relations Court) purposes. However, such a decision as to invalidity of the divorce is a collateral one not res judicata in any but that court, and surely not binding upon objectant here, who was without opportunity, not having been a party there, to litigate that issue as it affects her now.
The chief and only substantial asset of decedent’s estate is a pension from the United States Department of the Navy for the surviving “widow” of the decedent for the widow’s lifetime. This decision may also affect Social Security benefits as between the two contending women.
The first wife is 62 years of age and is self-supporting. The second wife is younger and lived with the decedent as wife and husband for some 18 years until his death.
The decedent’s pension is based on his long service to the United States Department of the Navy in the Brooklyn Navy Yard in the City of New York, commencing in 1950 and, I infer, without any interruption until his recent retirement, inasmuch as (a) no interruption was claimed or proved, and (b) the magnitude of the pension substantiates long and continuous service, and (c) the petitioner testified and I find that decedent *633 visited her and their children regularly about three times per week during the year when decedent was supposedly residing in Newport News, Virginia, just prior to his March 1953 Virginia decree of divorce, and (d) petitioner and decedent were domiciled in New York when they married in 1932, and objectant and decedent were domiciled in New York from 1954 until the decedent died.
A decree of divorce from a sister State is a conclusive adjudication of all but jurisdictional facts. And such a decree establishes a strong presumption of the validity of the finding of domicile by the sister State (Williams v. North Carolina II, 325 U. S. 226 [1945]). However, the finding of domicile by the rendering State may be collaterally attacked by a nondomiciliary of that State who did not appear in the foreign action (Cook v. Cook, 342 U. S. 126, supra; Williams v. North Carolina II, supra; Douropoulos v. Douropoulos, 67 Misc 2d 518 [1971]). And if the presumption of domicile is rebutted by a sufficient showing of fact the New York courts must deny giving any faith and credit to a foreign decree of divorce.
If Virginia has made a finding of jurisdictional residence of decedent based upon sheer misrepresentation by decedent, without having in personam jurisdiction over petitioner in the Virginia action, the denial of due process of law to petitioner removes the duty of this court to give any faith and credit to the Virginia decree, and indeed may compel all courts to deny any faith and credit to that decree (cf. Griffin v. Griffin, 327 U. S. 220 [1946] ; Rappel v. Rappel, 39 Misc 2d 222 [1963], affd. 20 A D 2d 850 [1964]).
The petitioner is hereby found to be decedent’s widow. The unilateral divorce of March, 1953 obtained by decedent in Virginia is denied full faith and credit for lack of jurisdiction of the marital res and of the petitioning first wife. The decedent’s claim of one year’s residence in Virginia prior to that divorce, during which time he was busily and steadily working in the Brooklyn Navy Yard and domiciled and resident only in New York, and visiting his children and petitioner several times per week in New York City, is found to be fraudulent.
Objectant argues that petitioner’s claim is in the nature of an action for a declaratory judgment declaring the Virginia divorce invalid, and therefore is barred by the Statute of Limitations. Objectant further urges that petitioner’s failure to bring any proceeding to have the decedent’s divorce declared invalid for 18 years constitutes gross laches, and therefore she is estopped from asserting the invalidity of this divorce.
*634 The 'Court of Appeals in the recent decision of Sorrentino v. Mierzwa (25 N Y 2d 59 [1969]) held that a widow’s right in a pension does not mature until the death of the husband, and -that a petitioner may bring an action for declaratory judgment to secure her rights in a pension fund as long as the Statute of Limitations measured from the date of the husband’s death has not barred the enforcement of her right to that fund (Sorrentino v. Mierzwa, supra, p. 63).
This action was brought in the form of a petition for letters of administration by the petitioner. SCPA 1001 states that letters of administration must be granted to distributees of an intestate and that a surviving spouse must be granted first priority for such letters. SCPA 201 grants the Surrogate’s Court full general jurisdiction in law and equity to determine all questions in issue in all matters relating to the affairs of decedents. In addition, SCPA 209 (subd. 9) states that “in the exercise of its jurisdiction, the court shall have all of the powers that the supreme court would have in like actions and proceedings ”. This court, then, has full power to determine the validity of an out-of-State divorce before granting letters of administration (Matter of Lindgren, 293 N. Y. 18 [1944]). And it is hereby found that petitioner’s rights in the decedent’s pension did not mature until his recent death, and her request for letters and the incidental determination to be made regarding her status as decedent’s lawful wife are not barred by the Statute of Limitations (Sorrentino v. Mierzwa, supra, p. 63).
The Sorrentino case also controls this court on the issue of laches. In Sorrentino the Court of Appeals said (p. 63): “ As was stated in Feldman v. Metropolitan Life Ins. Co. (259 App. Div. 123, 125): ‘ Laches, a defense peculiar to courts of equity, is founded on lapse of time and the intervention of circumstances * * * that render it unjust on equitable principles for a court of equity to assist plaintiff * * * [It] is not mere delay but delay that works disadvantage or injury. ’ ’ ’
In the Sorrentino case, as in the case at bar, shortly after the deceased husband stopped making support payments, his first wife instituted an action for support in the Domestic Relations Court of the City of New York. The Domestic Relations Court granted the first wife an order of support and made an incidental determination that she was in fact the lawful wife of her husband. The Court of Appeals held that (p. 64): “ Having diligently obtained a support order in her favor and a valid determination that she was still married to the deceased, it was incumbent upon appellant to undertake the additional burden *635 of securing a further determination in Supreme 'Court; she was entitled to rely on the support order and its incidental determination of status until a subsequent determination was made to the contrary. The Family Court order was complied with until the husband’s death. The matter presently in dispute, the widow’s pension, did not arise until the husband’s death and then appellant promptly instituted this action. Under such circumstances, it can reasonably be said that the appellant has acted with all due diligence to protect her rights and a finding of delay as one of the requirements of laches cannot be sustained.” The court held that a finding of delay such as to constitute laches could not be sustained.
Petitioner in this action has carried on a proceeding for support against the decedent continuously since 1936 in the same Domestic Relations Court and its successor Family Court. She has always had an order of support on a means basis as decedent’s wife. In 1961 petitioner applied to the New York Domestic Relations Court for a modification of said support order. She asked for a new order for herself alone since the children were over 21 years of age. Decedent’s defense to this application was the Virginia divorce he had obtained. Nevertheless on November 1, 1961 an order for the support of petitioner alone as the wife on a means basis was made by the Family Court.
Decedent appealed this order to the Appellate Division, First Department. On May 7, 1963 the Appellate Division reversed the order of the Domestic Relations Court and granted a new trial (19 A D 2d 513 [1963]) for the reason that “ the inconclusive nature of the proof fails to either establish the bona fides of the marriage domicile in Virginia or to void such foreign decree ”.
Although the petitioning first wife thereafter appeared in the New York Family Court several times for a new trial, decedent failed to appear at these times. On September 17, 1963, after decedent had been arrested for his failure to appear in the Family Court, an order was made on his consent to pay petitioner, as still his proper wife, the sum of $10 per week. The record of the Family Court indicates that he appeared with his attorney on that day and was paroled. Obviously, when he was alive, he conceded in this manner the invalidity of his foreign divorce.
Unlike the Sorrentino case, the Family Court order was not complied with, and petitioner received little or no support from the decedent. This was due to the fact that the processes of *636 the New York State courts are unable to make income execu,tions against employees of agencies of the Federal Government. Neither garnishments nor payroll deduction orders of the Supreme 'Court or Family Court are effective against such agencies, because of the sovereign immunity of the United States. As to garnishments, such policy may be justified; but as to payroll deduction for support orders for helpless dependents there is no justification for the policy (Matter of Beahm v. Beahm, 47 Misc 2d 900 [Family Ct., New York County]). This is an area where the United States Government has shown insufficient concern for remedying a most egregious indifference to the welfare of helpless dependents, usually minors (especially those dependent on the wages of postal employees who are far more numerous than Navy Yard employees). It is long past time that remedial Federal legislation should protect helpless dependents (and taxpayers as well, by avoiding usual welfare costs), without the reprisals frequently visited upon erring fathers in Federal employment who are pressed to support their helpless dependents. The sovereignty of the United States of America should not be used as a shield for injustice to its helpless dependent citizens; the State of New York and its subdivisions do not so misuse their powers. Consequently, instead of some equitable allocation during the decedent’s lifetime between the conflicting requirements of his first wife and his three then minor children by her, and his second ‘ ‘ wife ’ ’ and his one minor child by her, the second “ wife ” and her child received substantially the entire benefit of decedent’s earnings by living with him.
The time has come for the first, and the only legal wife of the decedent to enter into the enjoyment of the only benefit which she can enforce as his widow.
The fact that decedent never complied with the Family Court support order is not a significant difference to distinguish this case from Sorrentino v. Mierzwa (supra). Petitioner has continually asserted her rights in the Domestic Relations and Family Court as the lawful wife of the decedent. Her right to payment under his pension did not accrue until his death, whereupon petitioner promptly instituted this action for the granting of letters of administration. Petitioner has acted with due diligence to protect her rights, and it is hereby found that she has not been guilty of such delay as to invoke the equitable doctrine of laches.
Besides the requirement of delay, such delay must be the cause of prejudice to a party before the doctrine of laches may be *637 invoked. In most cases similar to the one at bar in which laches have been successfully invoked the prejudice shown has been a change of position on the part of the second spouse in reliance on the first spouse’s inaction (Krieger v. Krieger, 25 N Y 2d 364 [1969]; Weiner v. Weiner, 13 A D 2d 937 [1961]; Schuman v. Schuman, 137 N. Y. S. 2d 485 [1954]; Berkley v. Berkley, 142 N. Y. S. 2d 273 [1955]; Wynn v. Wynn, 189 Misc. 96 [1947]). One of the factors to be considered in determining whether there was reliance on the inaction of the first spouse is the time that elapsed between the invalid divorce and the subsequent marriage (Sorrentino v. Mierzwa, supra, p. 64). Here the remarriage took place within 11 months of the granting of the Virginia divorce to the decedent, and a child was born to this marriage seven months later. Unlike Krieger v. Krieger (supra), where 12 years and a contested religious confirmation of the divorce before a remarriage took place, nothing happened between the first wife and decedent which misled the second “wife” to marry decedent and bear him a child. There is thus no evidence that any inaction on the part of petitioner caused objectant’s marriage to the decedent or motivated their having an immediate child. The marriage application of objectant and decedent to the New York City Clerk included the information that petitioner was not served in Virginia in any way nor was she personally under the jurisdiction of the Virginia court, which granted decedent’s divorce. If anyone was at fault besides the decedent, the objectant can be faulted for not having inquired into how the decedent, whom she met and married in New York, was able to convince the Virginia court to grant him a unilateral migratory divorce 11 months before she married him, while he was living in New York, not Virginia. The Court of Appeals’ implication that the birth of a child to the second invalid marriage may trigger a finding of laches and estoppel will only apply to a child born so long after the invalid divorce as to be fairly inferred to have been conceived in reliance upon the lengthy inaction of the invalidly divorced wife in not asserting her rights (Sorrentino v. Mierzwa, supra, p. 63).
The objectant further complains that granting of letters to petitioner, and finding her marriage void, will prejudice the rights of her and decedent’s infant son. But the decision of this court regarding the validity of objectant’s marriage will have no effect on the legitimacy of her and decedent’s child. Section 24 of the Domestic Relations Law which became effective April 30, 1969 provides that: “ A child heretofore or hereafter born of parents who prior or subsequent to the birth of such child shall *638 have entered into a civil or religions marriage * * * in the manner authorized by the law of the place where such marriage takes place, is the legitimate child of both natural parents notwithstanding that such marriage is void or voidable or has been or shall hereafter be annulled or judicially declared void.” Any rights this child has in decedent’s pension, social security benefits, or any assets of the estate are not affected by this decision and will be fully protected.
There has been no unreasonable delay on the part of petitioner in asserting her rights as decedent’s widow nor was there any prejudice to objectant or her infant son as a result of inaction by the petitioner. The doctrine of laches and estoppel is not applicable.
Submit decree granting letters of administration to the petitioning first wife, and denying same to the objectant, upon a finding, which is hereby made, that the petitioner is the widow of the decedent.