S. Samuel Di Falco, S.
This is a proceeding pursuant to EPTL 8-1.1 (subd. [c]) for an order directing the method of effectuating a testamentary charitable gift in a situation where circumstances have changed since the execution of the will. The court is asked to apply its cy pres power.
The petitioners are the Trustees of the Sailors ’ Snug Harbor in the City of New York, hereinafter referred to as “ the Harbor ”. The application is opposed by the Attorney-General of the State of New York as the statutory representative of ultimate charitable beneficiaries. The petition requests permission of the court to relocate the facility presently maintained by the petitioners in Staten Island, New York, to the Town of Sea Level, North Carolina. The Harbor is a charitable corporation established by an act of the Legislature of the State of New York (L. 1806, ch. 4) pursuant to the will of Robert Richard Randall admitted to probate by the Surrogate of New York County of July 10,1801.
In his will decedent directed that there be constructed and operated in perpetuity a home for “ aged, decrepit and worn out sailors ” to be called The Sailors ’ Snug Harbor. The site selected by the testator was real property located in what is now Greenwich Village in the Borough of Manhattan, New York. In 1828 a special act of the Legislature (L. 1828, ch. 276) permitted the Harbor to erect its facilities upon the ‘ ‘ island of New York, or adjacent thereto ”. The Tilden Act (enacted in 1893) (later known as Personal Property Law, § 12, now known as EPTL art. 8) was not then in effect. The Surrogate now has power, where a disposition is made by will and whenever circumstances have changed since its execution, to direct that a disposition for charitable purposes be applied in such a manner as in the judgment of the court will most effectively accomplish the testator’s charitable intent. This is cy pres power.
*1065 In the early stages of this proceeding the Attorney-General opposed the petition to sell the land and to relocate the facility and raised a defense that the Surrogate’s Court had no jurisdiction to grant the relief sought in this petition. On September 27, 1971 (Matter of Randall, 68 Misc 2d 119), this court held (p. 122) “ The defense challenging the jurisdiction of this court is stricken. The proceeding will be set "for hearing upon the issue of the removal of the institution to North Carolina”. That decision was unanimously affirmed by the Appellate Division, First Department (38 A D 2d 1012). A hearing on this issue was recently concluded. Consideration of certain counterclaims raised in the Attorney-General’s answer relating to other issues has been deferred. Before the hearing, during the pendency of this proceeding, the petitioner sought leave to sell its property on Staten Island on definite terms. This request was not opposed by the Attorney-General. An order was entered permitting the sale of the Staten Island property to the City of New York and to a private developer pursuant to separate contracts. These contracts provided for a total purchase price in excess of $8,000,000. The closings occurred during the. month of September, 1972 and the Harbor must vacate the premises on or before September, 1974.
In respect of the Staten Island property, the Attorney-General has conceded that there has been a change in character of the New York City area which requires relocation of the facility and that the Harbor could not be successfully continued at its present location. It is not the Attorney-General’s position that the facility must remain in the State of New York. It is the Attorney-General’s argument that the site in Sea Level, North Carolina, is not appropriate to adequately carry out the wishes of the testator and he is “ opposed to this specific move ”. The Attorney-General will not recommend a substitute site or substitute his judgment for that of the trustee concerning sites which might be appropriate. It is his contention that the burden of proof as to the appropriateness of a particular site is upon the trustees and to be determined by the court upon all the evidence presented.
This hearing was concluded on July 27, 1972 and during this court’s vacation recess, memoranda were exchanged by the parties and finally submitted. The proof establishes that the Harbor came to Staten Island in approximately the year 1833. It has in its long history housed more than 10,000 men. At the present time it provides a home for 150 former mariners and has a waiting list of about 300 men. For many years the res *1066 idents of the Harbor enjoyed the medical facilities afforded by the Marine Hospital adjacent to the Harbor on Staten Island. Soon these facilities will no longer be available. The Marine Hospital will close its doors. Seamen are entitled to the facilities of a marine hospital or other United States Public Health Service benefits for ailments incurred during the course of their employment.
At Sea Level, North Carolina, there is a hospital operated by Duke University only a few hundred yards from the proposed site. This hospital has a contract with United States Public Health Service under which seamen are treated. This hospital is presently only half occupied and according to the proof could accommodate the needs of Harbor residents for hospital care. This service would be completely without charge to approximately 75 % of the residents of the Harbor who would qualify. It was shown to the satisfaction of the court that this hospital has all immediate services required by the Harbor, including an operating room and a physical therapy department. Because of the affiliation with Duke University Medical Center located in Durham, North Carolina, in the event that special care was required, residents could be flown from a base at nearby Cherry Point to Durham or driven to the Duke Medical Center. There was testimony by officials of Duke University that the Duke University Medical Center intends to establish ‘ ‘ a Center for the Study of Aging and Human Development ’ ’ on 1,500 acres of land which Duke University presently owns adjacent to this site in Sea Level. It was testified that the Harbor would be assisted in developing its present site by Duke University experts and also would receive their professional assistance in establishing programs for medical care, nursing and recreation of its residents. The persons in proper authority at Duke University testified before the court to the commitment of the university to this project and the proposed co-operation with the Harbor.
It is not necessary for the court to consider the inadequacies of the Staten Island site. That was conceded, and indeed the sale consummated, without objection by the Attorney-General. Nor is there any issue about retention of the facility in the State of New York. Solely at issue is whether or not the Sea Level, North Carolina, site selected by the trustees will effectively accomplish the testator’s purpose under his will. There was testimony at the hearing as to environmental conditions pertaining at Sea Level. It was proved that the abundance of the land to be acquired by the Harbor at a very favorable price *1067 would permit the construction of a single-story, spread unit which would eliminate the need for stairs, elevators and ramps, a design ideal for housing the elderly. There was further proof of the freedom from water pollution and air pollution. The new home for senior mariners will be located on 100 acres overlooking the sea with fishing, boating and other marine activities available within the protection of the outer banks. Each room is to be built with its own terrace and entrance. The record indicates that adequate provision is being made for social and recreational activities.
One of the Attorney-General’s principal arguments as to the inappropriateness of this site is that its location is remote, that Sea Level is a very small community, that the town of More-head City some 30 miles distant does not afford the oppor-% tunities available in New York City. Indeed, in the year 1828 when legislative sanction was sought to remove the site of the Harbor from Greenwich Village to Staten Island, it could well have been argued that Staten Island was too far removed from the general community to afford an opportunity to residents of the Harbor to find some diversion.
According to the record at this trial, a mariner must have spent at least 10 years in the Merchant Marine on the deep sea to qualify for admission. The average age of the residents is 77 years. Approximately 85% of these residents suffer from some sort of respiratory disease; 25% of them require intensive infirmary care, some are confined to wheel chairs. 75% of these residents were born in foreign countries and of the remaining 25%, most were born in the States other than New York. In recent years less than 15% of the residents of the Harbor lived in New York City at any one time before they entered the Harbor. The foregoing illustrate that the remoteness of the Harbor from New York City or from any other large city would not result in a denial of an opportunity by friends or relatives to visit. The foregoing also shows that because of their advanced age, few of the residents can leave the Harbor. Most of their social and recreational needs are satisfied on the grounds of the facility itself. There was testimony that adequate transportation would be furnished by providing vehicles of the institution to those who desire to travel to Morehead City or elsewhere. Relocation to any comparable area consisting of 100 acres adjoining the sea in a favorable climate at a land cost of about $250 an acre would be impossible. Any site meeting these qualifications anywhere would meet the objection of remoteness.
*1068 It is incumbent upon this court in exercising its cy pres power to consider all factors in exercising its judgment as to what will most effectively accomplish the testator’s intent. No site can be perfect. Overall, it would seem that relocation in Sea Level will be in accord with the general purpose of the testator. Moreover, economic considerations and the opportunity to reduce operating costs by locating in that area in co-operation with Duke University would seem to provide a unique opportunity to accomplish Captain Randall’s intent to operate in perpetuity a home for aged seamen.
Where the court is asked to exercise its discretion in regard to effecting the decedent’s intent, the court should be presented with alternative dispositions. In response to inquiry by the court as to whether the Attorney-General had other suggestions, there was this response: “We are not going to tell the trustees how their discretion should be exercised.” In Matter of Lawless (194 Misc. 844, 859, affd. 277 App. Div. 1045, mot. for lv. to app. den. 302 N. Y. 949) the court was presented with a number of plans and noted: ‘ ‘ Several plans * * # for the effectuation of testator’s general charitable intention, have been suggested by petitioner and [another charity]. The Attorney-General offers none.” There is only one proposal before the court. There is no other proposal. The trustees are operating under a deadline. They must vacate within two years. This site has been under consideration for a long time. Considerable sums have been expended in site selection and planning. Many sites were considered. The land can be acquired at $26,000. Construction can be accomplished at a reasonable expenditure. The trustees have exercised their discretion after visiting the site. Considerable negotiations have taken place with business and local leaders. The co-operation and vast resources of Dulse University and its Medical Center, which enjoys high national repute, are at hand. The necessary inquiries have been made of the North Carolina Department of Health. It was shown that there is an adequate labor force available. There was proof to the effect that other facilities for aged seamen have removed from New York and. are now located in nonurban areas with southern climates.
The case for removal to the site selected is overwhelming. It is the conclusion of this court that the institution known as The Sailors’ Snug Harbor can continue, in accordance with the will of Captain Randall, to care for aged sailors by removing to Sea Level, North Carolina; and upon all of the foregoing this application is granted.