OPINION OF THE COURT
Ernest L. Signorelli, S.
The trustees of the Vanderbilt Museum, an educational corporation, have petitioned the court in two separate proceedings, i.e., to judicially settle an account of their acts and proceedings as trustees of the said museum, and to compel the County of Suffolk to account for its administration of an endowment fund which was created for the benefit of said museum. The County of Suffolk and the State Attorney-General have moved to dismiss such proceedings on the grounds, inter alia, of lack of subject matter jurisdiction and lack of standing.
William K. Vanderbilt, the decedent herein, died on January 8, 1944 leaving a last will and testament which was admitted to probate by a decree of this court dated February 28, 1944, and letters testamentary were issued thereon to the Guaranty Trust Company of New York.
*915 In paragraph Fourth of his will, the decedent left certain real and personal property located in the Town of Huntington in trust and in perpetuity as a public park and museum for the use, education and enjoyment of the public, subject to a life estate therein for his spouse. He also left $2,000,000 in trust as an endowment or maintenance fund with the income therefrom to be used for the maintenance, development and operation of the park and museum. These charitable dispositions took effect upon the spouse’s demise in 1947.
Said paragraph Fourth authorizes the trustees thereunder to convey the realty, personalty and maintenance fund to (1) New York State or (2) Suffolk County or (3) Huntington Town, provided that whichever governmental entity receives such property and maintenance fund it agrees to use said property and maintenance fund for the purposes and uses described in the will. If within two years of the effective date of the charitable dispositions no such agreement of conveyance is made, the testamentary trustees are to form a charitable corporation under the laws of this State for the uses and purposes set forth in said paragraph Fourth of the will and convey the realty, personalty and maintenance fund to such corporation.
In paragraph Twelfth 1(d) 1 of the will, the decedent provided that after the demise of his spouse, nine shares of his residuary estate be placed in trust for the benefit for life of his daughter, Muriel Vanderbilt Phelps, who is now deceased. Upon her death, four ninths of the remainder is distributable to her living issue, and if none, to a daughter of the decedent herein, Consuelo Vanderbilt Warburton, per stirpes. Five ninths of the remainder, or the entire remainder if both daughters are deceased leaving no issue, to the maintenance fund for the said park and museum. The Guaranty Trust Company was appointed trustee of the trust created under said paragraph Twelfth 1(d) 1.
The Vanderbilt Museum was chartered by the New York State Board of Regents as an educational corporation on July 15,1949 for the purpose of maintaining and operating a public museum.
On August 3, 1949, an agreement was entered into by and among William H. Hayes and Barclay H. Warburton *916 III, the then acting testamentary trustees under paragraph Fourth of the will, the County of Suffolk, the Suffolk County Park Commission and the Vanderbilt Museum Trustees. Said agreement conveyed the realty, personalty and maintenance fund under paragraph Fourth of the will to Suffolk County, and said county, the park commission and the trustees of the Vanderbilt Museum accepted said conveyance for the uses and purposes specified in the will. Chapter 782 of the Laws of New York, effective April 17, 1954, ratified and confirmed the conveyance agreement of August 3,1949. Since the aforesaid conveyance, the county has had the responsibility for the custody and investment of the maintenance fund.
The members of the Suffolk County Park Commission originally served as trustees of the museum. However, the corporate charter was subsequently amended to provide that the members of the Vanderbilt Museum Commission be entitled to serve as the museum’s trustees.
The executor’s account was judicially settled on December 20, 1957 and the said property and maintenance fund, which are the subject of the charitable dispositions, were turned over to the County of Suffolk. The Guaranty Trust Company, as trustee under paragraph Twelfth 1(d) 1 of the will, judicially accounted and distributed five ninths of Muriel’s trust to the aforesaid maintenance fund. Former Surrogate Hildreth in his memorandum decision of December 19, 1972 stated: “The funds should, therefore, be paid and distributed to the County of Suffolk * * * to be added to the ‘maintenance fund’ bequeathed under paragraph fourth of the will, and the whole fund be held separate and apart from other county funds * * * It is and will be the responsibility of the County to devote and maintain the park and Museum in conformity with the purposes stated in the will”.
Disputes arose between the museum’s trustees and the county over the dominion and control of the property and maintenance fund and their functions with regard to said property and fund, which eventually resulted in litigation between the said trustees and the county. That litigation terminated in a stipulation between the parties in December of 1979, whereby it was agreed that the county would *917 have title to the realty, personalty and the maintenance fund, and the trustees would exercise power over the operation and administration of the property and would receive all the income from the maintenance fund as well as any fees realized from the activities of the property.
The museum’s trustees have now filed an intermediate account covering a period for which they allege their conduct and actions as trustees have been criticized and have cited those who question their administration, to wit: Suffolk County, New York State Education Department, JSTew York State Attorney-General and the American Association of Museums, to show cause why such account should not be judicially settled. They have also petitioned the court for an order compelling Suffolk County to account for its stewardship of the maintenance fund.
Suffolk County contends not only that this court lacks subject matter jurisdiction, but, moreover, the petitioner trustees lack standing to bring the instant proceedings in any court. Although the Attorney-General similarly maintains that this court lacks subject matter jurisdiction, he differs with Suffolk County and concedes that the trustees do have standing to question the county’s stewardship over the maintenance fund, but that the proceeding properly lies in the Supreme Court and not in the Surrogate’s Court.
The county and the Attorney-General argue that there is lacking herein a true trust, as contemplated by the Surrogate’s Court Procedure Act, since the museum is neither a testamentary nor an inter vivos trust. They maintain that under SCPA 103 (subd 21) and 209 (subd 6) this court has subject matter jurisdiction over accounting proceedings and proceedings to compel an account only where the petitioner and/or the respondent are fiduciaries as defined therein. Since the Vanderbilt Museum is not classifed as such, it being an educational museum chartered by the New York State Board of Regents, this court, therefore, lacks jurisdiction over the instant proceedings. They contend that the testamentary grant herein is an absolute gift to a charity and does not create a true trust and should, therefore, not be judged by the rules pertaining to the law of trusts. They further maintain that this gift of a museum by Vanderbilt is in the nature of a public trust which is *918 subject to the provisions of the Not-For-Profit Corporation Law, and the activities of a not-for-profit corporation do not come within the jurisdiction of the Surrogate’s Court, but are properly regulated by the Supreme Court, a court of general jurisdiction. They rely upon St. Joseph’s Hosp. v Bennett (281 NY 115) and Matter of James (22 Misc 2d 1062, 130 NYS2d 693 [supplemental opn], affd 284 App Div 936, mot for lv to app den 284 App Div 1036, affd 309 NY 659). Even though the county and the Attorney-General take this position, they do concede, however, that the trustees have fiduciary responsibilities in the management of the charitable corporation.
The subject matter jurisdiction of the Surrogate’s Court is derived from section 12 of article VI of the New York State Constitution, and SCPA article 2.
Section 12 of article VI of the Constitution reads in pertinent part as follows:
“§ 12 *** d. The surrogate’s court shall have jurisdiction over all actions and proceedings relating to the affairs of decedents ***
“e. The surrogate’s court shall exercise such equity jurisdiction as may be provided by law”.
Both this court and the Supreme Court have concurrent jurisdiction over matters relating to the affairs of a decedent (NY Const, art VI, §§ 7, 12).
The Legislature reaffirmed the Surrogate’s jurisdiction over matters relating to the affairs of decedents in its enactment of SCPA 201 (subd 3), which provides: “§ 201 * * * 3. The [surrogate’s] court shall continue to exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to estates and the affairs of decedents, and * * * to try and determine all questions, legal or equitable *** as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or degree as justice requires.”
The scheme intended by the Constitution and the Surrogate’s Court Procedure Act is to concentrate jurisdiction as to matters relating to the affairs of decedents in one forum (Matter of Raymond v Davis, 248 NY 67). Heretofore, *919 notwithstanding the aforesaid conferral of jurisdictional powers, the Surrogates were, nevertheless, restrictive in the exercise of their jurisdiction if the particular action or proceeding was not within the traditional purview of the court. However, the trend has been, more and more, to exercise its constitutional jurisdiction to the broadest extent, to wit: stockholders’ derivative action (Matter of Maki v Ziehm, 55 AD2d 454); title to realty (Matter of Hall, 54 Misc 2d 923); child support (Matter of Chusid, 60 Misc 2d 462); rights and obligations under a stockholder’s agreement (Matter of Ryan, 63 Misc 2d 415); validity of out-of-State divorce (Matter of Carter, 69 Misc 2d 630).
It is generally acknowledged that the Surrogate’s Court has the necessary expertise in the processing of accounting proceedings since its personnel possess the requisite knowledge and skills (Matter of Fornason, 88 Misc 2d 736). The New York State Legislature in recognition of this fact has seen fit to amend SCPA 209 by extending the Surrogate’s jurisdiction to include inter vivos trusts. Furthermore, this court is cognizant of the congested calendars prevalent in the Supreme Court, and to assist in the expeditious administration of justice this court should adjudicate matters which it heretofore declined to process (Matter of Piccione, 106 Misc 2d 898).
The term “trust” used by the lawyers and the courts, in addition to its classic usage, encompasses a variety of fiduciary relationships, i.e., bailment, guardianship, agency and partnership. As a legal concept it is not readily susceptible to a precise definition. However, those responsible for the Restatement of Trusts proposed the following definition of an express trust: “‘a fiduciary relationship with respect to property, subjecting the person by whom the title to property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it’ ”, (1 Scott, Trusts [3d ed], § 2.3, pp 37, 38.)
Those who are charged with the responsibility of operating the museum have fiduciary responsibilities with regard to the proper utilization of the property and funds conveyed to them by the decedent’s testamentary trustees even assuming, arguendo, that there is not a trust in the *920 literal sense. A fiduciary is legally accountable for his stewardship. It is significant to note that the Suffolk County Executive and others have made serious allegations concerning the affairs of the museum which allegations have been the subject of the widespread media coverage and comment. The trustees in turn have publicly expressed accusations concerning the management of the maintenance fund by the county. This publicly aired controversy has only served to create doubt in the minds of the people”of Suffolk County as to whether the Vanderbilt Museum is being efficaciously operated and administered in accordance with the testamentary wishes of its benefactor. It would, therefore, be in the public interest for the Surrogate to entertain the proceedings in question and conduct an appropriate inquiry as to the validity of these charges.
The Surrogate’s Court is the logical and proper forum for the rendering of an accounting in view of the fact that the grants herein are testamentary grants which involve fiduciary relationships. It is, therefore, irrelevant that the museum’s trustees are not fiduciaries as defined in SCPA 103 (subd 21). The Surrogate’s Courts throughout this State have entertained proceedings to account by attorneys in fact (Matter of Schilbaek, NYLJ, Oct. 7, 1976, p 7, col 2; Matter of Burgun, Surrogate’s Ct, Suffolk County, No. 189, p 1970, Aug. 28, 1978) and by partnerships (Raymond v Davis, 248 NY 67, supra; Matter of Benson, Surrogate’s Ct, Suffolk County, No. 1147, p 1971, July 21, 1977). Neither a “partner” nor an “attorney-in-fact” is expressly defined as a “fiduciary” in SCPA 103 (subd 21), and Surrogate’s Courts have jurisdiction over the rendering of these accounts. Furthermore, the Legislature chose not to place the powers of the Surrogates in a legal straightjacket as evidenced by its enactment of SCPA 202 which reads as follows: “The proceedings enumerated in this act shall not be deemed exclusive and the court is empowered in any proceeding, whether or not specifically provided for, to exercise any of the jurisdiction granted to it by this act or other provisions of law, notwithstanding that the jurisdiction sought to be exercised in the proceeding is or may be exercised in or incidental to a different proceeding.”
*921 EPTL 8-1.1 which is entitled “Disposition of property for charitable purposes” provides as follows:
“(c) The supreme court and, where the disposition is made by will, the surrogate’s court in which such will is probated have jurisdiction over dispositions [made for charitable purposes] * * *
“(e) Any accumulation of income from property subject to a disposition in trust for a religious, charitable, educational or benevolent purpose, or otherwise acquired by such trust, shall in all respects, including its reasonableness, amount and duration, be within the jurisdiction of the supreme court or the surrogate’s court, as the case may be * * *
“(g) The supreme court or the surrogate’s court, as the case may be, may authorize the trustee or any person holding title thereto to sell, mortgage or lease any real property which is the subject of a [charitable] disposition” (emphasis added).
The Legislature, in recognition of the fact that the Constitution has accorded to the Surrogate’s Court jurisdiction in all matters pertaining to the affairs of a decedent, has thus seen fit to confer the foregoing powers as enumerated in EPTL 8-1.1. It is, therefore, fallacious to argue that, although the Surrogate has these enumerated powers, i.e., cy pres, the propriety of corporate action relating to the accumulation of income and the sale, mortgaging and/or leasing of realty, it is powerless to judge the propriety of the fiduciary’s management of the charitable fund. To hold otherwise would fragment the court’s jurisdiction, would be contrary to the present judicial trend and extremely restrictive, and finally, would be in derogation of SCPA 202.
The matter of Trustees of Sailors’ Snug Harbor in City of N. Y. v Carmody (158 App Div 738, affd 211 NY 286) is reflective of the prevailing view. There an action was commenced in the Supreme Court by the said trustees for authorization to sell or mortgage certain realty and for advice and direction. The decedent therein, Robert Randall, left his residuary estate in trust and in perpetuity, the income of which was to be used to erect upon the deceased’s *922 land an asylum or hospital which would support aged, decrepit and worn-out sailors. If the trustees under his will could not legally carry out the decedent’s directions without an act of the State Legislature to incorporate them for the purposes specified in his will, they were to procure such an act. The trustees applied to the State Legislature for a special act of incorporation and such an act was passed creating a corporation known as “The Trustees of the Sailors’ Snug Harbor in the City of New York”. The State Attorney-General contended therein that the property in question was held by a corporation for the purposes expressed in the act of incorporation and since the corporate powers were found in that act, it is the State Legislature that must augment any authority that the petitioners may lack regarding the property in question and, therefore, the court lacked jurisdiction over the action before it. The appellate court responded as follows: “In none of the very numerous cases *** in this country, where the courts have exercised jurisdiction to establish direct or administer charitable trusts, of which corporations were the donees, have I found one where *** it has been suggested that the mere fact that the trust was to be executed by a corporation, deprived the court of its power to exercise its „ usual jurisdiction in similar matters. In fact, there is no authority to be found for such a proposition.” (158 App Div, at pp 750-751.) Subsequently, in Matter of Randall (68 Misc 2d 119), application was made to the Surrogate for permission to dispose of the land and structures known as Sailors’ Snug Harbor and to transfer that institution to a'pother State. Again, the Attorney-General contended that the court lacked jurisdiction to entertain the petition and argued that only the State Legislature could grant the relief sought. The Surrogate held that he had jurisdiction (EPTL 8-1.1). (See, also, Matter of Jones, NYLJ, Feb. 17, 1981, p 17, col 1.)
In the case at bar, the Vanderbilt Museum and its maintenance fund had its genesis in the will of the decedent. It was that document which created what is today known as the Vanderbilt Museum. The charitable dispositions are for a specific purpose and neither the County of Suffolk nor the museum’s trustees are given any discretion *923 in the use of either the realty and personalty or the maintenance fund. On the contrary, the said property and fund must be used and administered as provided in the will. Although the county now owns what comprises the property and maintenance fund which was once owned by the decedent, it received title thereto with the proviso that the said property and maintenance fund be administered for the uses and purposes set forth in the decedent’s will. The umbilical cord between the will and the property and maintenance fund has never been severed. Whether the County of Suffolk or another entity owns the said property and maintenance fund, they must be administered pursuant to the dictates of the deceased’s will.
Parenthetically, George W. Percy, Jr., a former Suffolk County Attorney, was of the opinion that the Surrogate’s Court of Suffolk County has continuing jurisdiction over the Vanderbilt Museum trust. In the year 1968 he deemed it appropriate to bring a proceeding in the Surrogate’s Court of Suffolk County on behalf of the museum’s trustees for the authorization to expend a portion of the maintenance fund for the purpose of constructing a planetarium. He sought the Surrogate’s advice and direction in this regard even though this is not one of the enumerated proceedings in EPTL 8-1.1. The Attorney-General did not contest the court’s subject matter jurisdiction or object to the granting of the relief sought. Former Surrogate Hildreth, on June 12, 1968, rendered a decision granting the trustees’ application.
In view of the foregoing, the court determines that the Surrogate’s Court has subject matter jurisdiction. EPTL article 8 confers upon the trustees of a charitable trust the direct right to sue to protect the rights of the beneficiaries of the said trust. The Attorney-General, on the other hand, does not have the direct right to sue but his right to maintain an action is merely a derivative right which he may pursue only after he has first made a demand upon the trustees to commence an appropriate action and which demand has been refused. (Matter of Gebbie, 33 AD2d 1093, mot for lv to app den 27 NY2d 482.) Accordingly, I hold that the trustees have standing to bring the proceedings herein.
*924 The American Association of Museums forwarded to the court, through their attorneys, a motion to dismiss the instant proceedings along with an application by their counsel to appear pro hac vice. The court denied the application of their counsel to appear pro hac vice, returned the motion papers and advised the American Association of Museums to retain counsel who is admitted to practice in the State of New York. No further application was made by the said association to dismiss the instant proceedings. Although no such motion is pending before the court, it is noteworthy that the association’s request for dismissal as against itself is predicated upon the fact that it is not subject to personal jurisdiction to New York because its offices are located in Washington, D.C. This court, however, does have jurisdiction over the said association in view of the “long-arm” provisions contained in CPLR 302 since the association purports to exercise a power of accreditation and evaluation over museums in the State of New York.
Finally, a motion has been made by a prospective intervenor, Benjamin Greshin, for permission to intervene in the instant proceedings, or in the alternative, to participate amicus curiae on the ground that the prospective intervenor is a trustee of the Vanderbilt Museum. The papers filed herein indicate that the said intervenor’s trustee status has been questioned and has been the subject of appellate review. Recently, the Court of Appeals on March 26,1981 ruled that Benjamin Greshin is no longer a trustee (Matter of Greshin v Suffolk County Legislature, 53 NY2d 670). Furthermore, all sides of the issues raised herein are being adequately represented, and it does not appear that the granting of the relief sought would serve any constructive purpose and the motion is, accordingly, denied.
All motions filed herein are denied.