OPINION OF THE COURT
Renee R. Roth, S.
This proceeding raises a preliminary issue as to this court’s jurisdiction.
The Attorney-General, pursuant to EPTL article 8 and Not-For-Profit Corporation Law articles 5 and 7, petitions for multiple relief. Basically, he requests that the trustees of the Braker Memorial Home (the Home) and the trustees of St. Barnabas Hospital (the Hospital) account to this court for their actions inter se. The Attorney-General seeks this relief on behalf of the ultimate charitable beneficiaries of the Home.
The Home was created pursuant to a direction contained in the will of Henry J. Braker who died in 1908. In addition to several other charitable dispositions, Mr. Braker gave $1,000,000 to his trustees to incorporate, construct and operate the Braker Memorial Home in memory of his parents. The Home *895 was to be operated as a nonsectarian home for indigent male and female residents over the age of 50 years. The trustees were directed to operate the Home on a conservative basis solely from the income of that part of the million dollar bequest that was not used for constructing and outfitting the Home.
The Home was finally incorporated in 1924. In 1927, the then trustees of the Home entered into a 25-year lease with the Hospital under which a building was to be constructed on property owned by the Hospital. The present facility was in fact constructed on that property. At the end of the 25-year period, the Home and the Hospital entered into an extension agreement for an additional 25 years.
In 1977, with the approval of the Supreme Court, Bronx County, a further extension agreement was made for an additional five years. The original lease and each of the two extensions, all approved by the Supreme Court, provided that the Hospital would operate the Home and the Hospital was to be given the income from the trust fund provided by Mr. Braker. Another provision required that 2% of the original cost of the building and its equipment be paid to and maintained in a depreciation fund, now equal to said original cost. Each of the leases also provided that upon termination of the lease, the premises, equipment and improvements comprising the Home be transferred to the Hospital upon payment by the Hospital to the Home, the appraised value only of the improvements not covered by the depreciation fund.
It is noted that during each of the extension periods, the trustees and directors of the Home and the Hospital have been the same individuals making the leases with one another and always with a petition to and approval by the Supreme Court.
The 1977 lease extension for five years, agreed to by the Attorney-General and approved by the Supreme Court, was intended to be the last extension, so that the premises would be finally surrendered to the Hospital upon its payment to the Home as indicated above.
On June 16, 1983, the Attorney-General commenced the present proceeding ostensibly to prevent the closing of the Home. The petition alleges that the directors of the Home, while also serving as directors of the Hospital, have mismanaged the trust fund by spending funds inconsistent with the restrictions in the governing instrument, by allowing deficits to accumulate and by otherwise depleting the Home’s resources without making plans for its future and that this same conduct unjustly enriched the Hospital.
*896 The respondents (the Home, the Hospital and their individual trustees and directors) have filed an answer which, in addition to denying any wrongdoing, raises an issue of this court’s jurisdiction. Respondents have accordingly moved to dismiss the Attorney-General’s petition on jurisdictional grounds.
A discussion of the issues raised by respondents follows:
(1) The sole contact the Surrogate’s Court, New York County, had with the Home or the Hospital was to admit to probate the will of Henry Braker in 1908 and to discharge the executors in 1925 by a final decree on accounting.
(2) Mr. Braker’s will does contain a gift over in the event the disposition to the Home fails. However, such a gift over is significant only to retain further jurisdiction in the Surrogate’s Court if the gift over applies after vesting. But the terms of paragraph 38 of Mr. Braker’s will plainly establish that the gift over to his wife is intended to take effect only if the gift over fails before vesting. Gifts over after vesting, moreover, are not favored (see, Matter of Goehringer, 69 Misc 2d 145, 149-150, and cases cited).
(3) Both the Braker Memorial Home and St. Barnabas Hospital, although created differently, one by special act and the second by general act of the Legislature (Not-For-Profit Corporation Law § 102 [a] [5]), are presently defined as type B, not-for-profit corporations and subject to the provisions of law governing such corporations (Not-For-Profit Corporation Law § 201).
The pertinent law can be summarized as follows:
(a) Any conduct of a not-for-profit corporation ultra vires its charter must be approved in advance or ratified by the Supreme Court.
(b) An action by the Attorney-General to annul or dissolve a not-for-profit corporation must be brought in the Supreme Court (Not-For-Profit Corporation Law § 203).
(c) The certificate of incorporation of a type B corporation in most circumstances requires the approval of a Justice of the Supreme Court (Not-For-Profit Corporation Law § 404 [a], [b]).
(d) The permission of the Supreme Court is required before such a corporation may voluntarily dispose of substantially all of its assets (Not-For-Profit Corporation Law § 511).
(e) The Supreme Court is vested with exclusive jurisdiction over any proceeding involving the election of officers, directors or members of a not-for-profit corporation (Not-For-Profit Corporation Law § 618).
*897 (f) The Supreme Court is vested with jurisdiction to compel production and inspection of the books and records of such a corporation (Not-For-Profit Corporation Law § 621).
(g) Action by the Attorney-General to remove an officer or director must be brought in the Supreme Court (Not-For-Profit Corporation Law §§ 706-714).
(h) Actions against directors and officers of such corporations are usually brought in the Supreme Court (Not-For-Profit Corporation Law § 720; see also, § 725).
(i) The Supreme Court has exclusive jurisdiction to supervise nonjudicial dissolution of such corporations (Not-For-Profit Corporation Law § 1008).
(j) All proceedings for judicial dissolution of a not-for-profit corporation must be brought in the Supreme Court (Not-For-Profit Corporation Law § 1110).
From all of the foregoing it is obvious that many of the acts or conduct of the respondents, as alleged by the Attorney-General, are acts and conduct either exclusively within the jurisdiction of the Supreme Court or considered part of its jurisdiction.
(4) Although the jurisdiction of the Surrogate’s Court is, as the Attorney-General contends, very broad (Matter of Piccione, 57 NY2d 278; Matter of Maki v Estate of Ziehm, 55 AD2d 454, 456-457; Matter of Rothko, 69 Misc 2d 752, affd 40 AD2d 1083), it is necessarily limited to proceedings involving, in some manner and to some extent, the estate of a decedent. But such jurisdiction does not extend to matters that were a very long time ago encompassed or included in a proceeding in an estate in this court which was terminated by final decree. Under such a misconception, every action involving real property in this county would be within this court’s jurisdiction because some proceeding in this court would invariably be involved in the chain of title to such property (compare, however, Matter of Vanderbilt, 109 Misc 2d 914, which held that the umbilical cord had not as yet been severed).
(5) It is true, as contended by the Attorney-General, that EPTL article 8 confers specific jurisdiction on the Surrogate’s Courts over charitable trusts. But one of the sections addresses the specific contentions of the Attorney-General with respect to the conduct of the Home and the Hospital.
EPTL 8-1.1 (d) does confer jurisdiction on the Surrogate’s Courts “to prevent the failure of, and to give effect to dispositions for * * * charitable * * * purposes”. But such jurisdiction does not extend to charitable dispositions which vested a long *898 time ago and over which the power of termination or reversion is not preserved to the court by decedent’s will. It is also true that EPTL 8-1.1 (f) and 8-1.4 confer very broad powers upon the Attorney-General to institute a proceeding of the present nature, but these sections do not confer additional jurisdiction on this court.
(6) Finally, this court has examined the 1977 proceeding commenced by the Hospital in the Supreme Court, Bronx County, which resulted in a decree of that court dated May 23, 1977 (Cotton, J.). The petition in that proceeding requests and the decree authorizes not only a five-year extension of the lease from the Hospital to the Home, but also substantially modifies the provisions of the prior lease. One of the modifications, apparently consented to by the Attorney-General in 1977, permitted the Home to be closed upon termination of the lease on April 30, 1982. Another clause permitted a very substantial modification of the terms relating to repurchase of the Home’s real property by the Hospital.
The Attorney-General, who apparently approved these modifications, now requests their reconsideration by this Surrogate’s Court. This court, however, may not reconsider issues apparently considered and decided by the Supreme Court.
Accordingly, this proceeding commenced by the Attorney-General is dismissed.